1  Manse Sullivan
   C-000425-9 / Unit #MA-2
2  Coalinga State Hospital
   P. O. Box 5003
3  Coalinga, California 93210

4  Moona Nandi
   Deputy Attorney General
5  State Bar No. 168263
   455 Golden Gate Ave., Suite 11000
6  San Francisco, CA 94102-3664

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11  MANSE SULLIVAN,                )        C07-030202 JW (PR)
              Petitioner,          )
12                                 )        PETITIONER'S TRAVERSE IN DENIAL OF
                                   )        RESPONDENT'S ANSWER TO WRIT OF HA-
13  v.                             )        BEAS CORPUS AND MEMORANDUM OF
                                   )        POINTS AND AUTHORITIES
14                                 )
    WARDEN,                        )
15            Respondent.          )
                                   )
16  _____)

17

18  Comes Now Petitioner, Manse Sullivan, moves this Court to remove

19  the pending civil commitment, and/or reverse the indeterminate[1] Com-

20  mitment finding due to "material legal error" on the part of the

21  Department of Mental Health (hereinafter, "DMH") evaluators, pur-

22  suant to People v. Superior Court (Ghilloti)(2000) 27 Cal. 4th 888.)

23  There has never been the prerequisite finding under the Sexually

24  Violent Predator Act (hereinafter, "SVP") (Welfare and Institutions

25  Code, §6600 et seq.)(hereinafter, "WIC") of a "diagnosed mental

26  disorder". The evaluators relied on a diagnosis that is not sup-

27  _____
    1/ All further statutory reference are to the term Indefinite unle
28  otherwise specified.

                            - 1 -

FILED

2008 JUN 23 P 3: 50

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

1 ported by the professional literature and that the California De-

2 partment of Mental Health has been federally barred from using in

3 its assessments of institutionalized persons. The finding of "Inde-

4 termine Commitment" should therefore be nullified by the Court and

5 Petitioner (m)ust by released forthwith as he does not suffer from

6 any qualifying "diagnosable mental disorder".

7   Petitioner's Traverse shall be based on the attached Memorandum

8 of Points and Authorities, and attached Exhibits submitted concur-

9 rently herewith.

10

11

12 June 16, 2008.

13                                Respectfully submitted,

14                                Manse Sullivan

15                                Petitioner

16

17

18

19

20

21

22

23 ////

24 ////

25 ////

26 /////

27

28

# T A B L E   O F   C O N T E N T S

Page:

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . .  3,

CASE CITATIONS  . . . . . . . . . . . . . . . . . . . .  4,

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . .  5,

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . .  6,

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DENIAL TO ANSWER TO  . .  8,
ORDER TO SHOW CAUSE

## I.
## A R G U M E N T

PETITIONER STATES THAT THE COURT HAS THE
AUTHORITY TO GO FORTH WITH THE PETITION  . .  8,
UNDER "EXTRORDINARY CIRCUMSTANCESS"

1. Evaluators' Testimony at Probable Cause
   Hearing and at the Trial is Founded on
   Flawed Evidence . . . . . . . . . . . . . . . .  12,

2. Federal Consent Judgment Imposed DMH . . . .  14,

## II.
THE COURT HAS DISCRETION TO HEAR THE
PETITION FOR WRIT OF HABEAS CORPUS  . . .  16,
ON THE MERITS ALONE

## III.
UNDER THE SVPA PETITIONER MUST HAVE
A SERIOUS DIFFICULTY CONTROLLING HIS
BEHAVIOR DUE TO A DIAGNOSABLE MENTAL  . . .  16,
DISORDER

## IV.
THE STATUTE PRESUMES MENTAL DISORDER
AND DANGEROUSNESS WITHOUT CURRENT PROOF
OF A DIAGNOSED MENTAL DISORDER  . . .  19,

## V.
WITHOUT DESCRIPTIVE CRITERIA THAT JUSTIFIED ITS
ASSIGNMENT, THE DIAGNOSIS, PARAPHILIA (NOT
OTHERWISE SPECIFIED) DOES NOT EVEN MEET  . .  23,
DSM-IV-TR CLINICAL DIAGNOSTIC RULES OR PROTOCOL

# C O N C L U S I O N   . . . . . . . 29,

C A S E   C I T A T I O N S

Page:

People v. Superior Court (Ghilloti) (2000) 27
Cal. 4th 888;  . . . . . . . . . . . . . . . . .    1, 7,

Cooley V. Superior Court (Marentez) (2002) 29
Cal. 4th 228;  . . . . . . . . . . . . . . . . .    7,16,

Younger v. Harris, 401 U.S. 37, 46 (1971);  . . . .    10,

Patterson v. Leeke, 556 F.2d 1168 (C.A.4
(S.C.) 1977);  . . . . . . . . . . . . . . . .    8,

United States v. Booker, 543 U.S. 220, 227-229,
125 S.Ct. 738, 160 L.Ed.2d 621;  . . . . . . . . .    9,

Planned Parenthood of Northern New England,
(U.S. 2006) 126 S.Ct. 961, 546 U.S. 320);  . . . . .    9,

Carden v. Montance, 626 F.2d 82, 83 (9th
Cir. 1980);  . . . . . . . . . . . . . . . . .    10,

Harris v. Superior Court of the State of CA,
500 F.2d 1124, (9th Cir. 1974);  . . . . . . . . .    10,

Evers v. Dwyer, 358, 202, 79 S.Ct. 178, 3 L.
Ed.2d 222;  . . . . . . . . . . . . . . . . .    11,

Georgia v Rachel, 384 U.S. 780, 86 S.Ct. 1783,
16 L.Ed.2d 925;  . . . . . . . . . . . . . . .    11,

People v. Superior Court (Cheek) (2001) 94 Cal.
App.4th 980, 988;  . . . . . . . . . . . . . . .    16,

In re Wright (2005) 128 Cal.App.4th 663, 672;  . .    16,

Kansas v. Crane (2002) 534 U.S. 407:  . . . . . . .    17,

People v. Williams (2003) 31 Cal. 4th 757;  . . . .    17,

People v. Burris (2002) 102 Cal.App.4th 1096;  . .    23, 24,

Sharp v. Weston (2000) 233 F.3d 1166, 1171;  . . .    25,

Young v. Weston, supra, 898 F.Supp. at. 750.). . . . .    19,

People v. Wilder, supra, 33 Cal.App.4th at p.101)  . .    19,

People v. Gibson, (1988) Cal.App.3d 1425;  . . . . .    20,

Levine v. Torvick (6th Cir.1993) 986 F.Supp. 1506,
1513    . . . . . . . . . . . . . . . . . . . .    20,

People v. Lakey, Supra, Cal.App.3d at p. 971;  . . . .    20,

Foucha v. louisiana, supra, 504 at. p.82);  . . . . .    20,

Ohlinger v. Watson (9th Cir. 1980)625 F.2d 775,778;  . .    21,

people v. Feagly, supra, 14 Cal3d at. p.359);  . . . .    21,

People v. Poe (App. 1 Dist. 1999) 88 Cal.Rptr.2d
437,74 Cal.App.4th 826);  . . . . . . . . . . . . .    21,

Cross v. Harris (D.C. Cir. 1969) 418 F.2d 1095,
1107.);  . . . . . . . . . . . . . . . . . . .    22,

S T A T E M E N T   O F   F A C T S

Petitioner, Manse Sullivan, is the party in this entitled matter before the Court, Case No. C07-030202 JW (PR).

On October 4, 2005, Judge A. Fernandez in the Superior Court of Santa Clara County rendered a probable cause opinion, which was subsequently determined that Petitioner met the criteria of WIC. The opinion supported by facts that were unrelated to the findings of a diagnosed mental disorder.

Hereafter, November 16, 2006, Petitioner was recommitted pursuant the emergency bill that went into effective on Setember 20, 2006, Senate Bill 1128 (SB 1128), Stats. 2006, Chapter 337 the indeterminate commitment statute, and then Petitioner was transferred to the Department of Mental Health, Coalinga State Hospital (hereinafter, "CSH") where he is presently being confined.

Petitioner has been the subject of three recommitment proceedings under the SVPA based on the flawed diagnoses Paraphilia-NOS, and specifically under former Welf. & Inst. Code §6604 and §6604.1. which is now the statute before the Court. These proceedings that were brought on August 08, 2005 by the filing of a recommitment petition.

Petitioner was initially committed for two years under the SVPA on November 02,1999. His initial commitment under the SVPA was subsequently only extended for a two year commitment, but the original intent of the law has been substituted under SB-1128.

. . . . . . . .

- 5 -

STATEMENT OF THE CASE

Petitioner, Manse Sullivan, sought on writ to have this Court remove the pending petition, which he is detained under on civil and/ or Indefinite Commitment on the grounds that Petitioner's Fifth, Eighth, and Fourteenth Amendment rights to substantive due process, has been unconstitutionally violated by the unreasonable and arbitrary application of the Statutory Criteria for commitment pursuant the SVPA (Welf. & Inst. Code §6600 et. seq.). It would be a gross miscarriage of justice, shocking to a judicial system based upon fundamental fairness, and substantive due process if the Court was to leave intact the Indefinite Civil Commitment on the question-able evidence presented by the California Department of Mental Health evaluators, Doctor Korpi and Starr, who claimed at Petition-er's trial that Paraphilia-NOS was a diagnosis mental disorder. The potential injustice is compounded by the recent passage of Senate Bill 1128, which authorizes Respondents to seek an Indefinite Com-mitment term instead of the original two year commitment that was in place at the imposition of the law.

The evaluators testified that Petitioner has a "diagnosed mental disorder" of "Paraphilia-NOS "Otherwise Specified" (hereinafter, "NOS"). The Civil Rights Division of the U.S. Department of Justice has determined that such diagnoses are "ambiguous" and "substant-ially depart from generally accepted professional standards," fol-lowing its investigation of several state mental institutions in 2005, (i.e., Coalinga State Hospital) as well. Yet, the evaluators reliance on this federally-barred diagnosis, therefore, does not meet with the SVPA criteria as a viable diagnoses for commitment.

- 6 -

1    In the alternatively, Petitioner moves for a dismissal of the in-

2    definite commitment, and the commitment petition pursuant to,

3    (People v. Superior Court (Ghilotti) (2002) 27 Cal. 4th 888; also,

4    Cooley v. Superior Court (Marentez) (2002) 29 Cal. 4th 228;) Peti-

5    tioner request that the Court consider the issue that the evaluat-

6    ors committed material legal error by failing to examine him in

7    accordance with "'...a Standardized Assessment Protocol' that deter-

8    mines a 'diagnosable mental disorder...'" Ghilotti, supra, 27 Cal.

9    4th 888, 910: The failure appears on the face of their reports, as

10   both evaluators relied on the discredited "Paraphilia-NOS diagnosis

11   for the SVPA's diagnosable mental disorder requirement. To do so,

12   denied Petitioner a constitutional right to a fundamentally fair

13   trial, which Petitioner is entitled to by virtue of the Fourteenth

14   Amendment due process.

15   The above mentioned reasons, Petitioner hereby enters his denial

16   and exception to the Answer to the Order to Show Cause in the above

17   entitled action on writ of habeas corpus. Moreover, Petitioner ad-

18   mits for the purpose of this action the allegations contained in

19   the Introduction, but denies that Respondent is entitled to a judg-

20   ment in their favor pursuant Younger v. Harris, 401 U.S. 37, 46

21   (1971).

22

            . . . . . . . . .

23

24

25   ////

26   ////

27   ////

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DENIAL TO ANSWER
TO ORDER TO SHOW CAUSE

I.
A R G U M E N T

PETITIONER STATES THAT THE COURT HAS
THE AUTHORITY TO GO FORTH WITH THE
PETITION UNDER "EXTRORDINARY CIRCUM-
STANCES"

Respondent argue that this Court should dismiss the petition for writ of habeas corpus under Younger v. Harris, 401 U.S. 37, 46 (1971). However, Petitioner allege that the Court has the authority to hear the petition pursuant the "Doctrine of Extraordinary Circumstances". In particular, Petitioner assert that Welf. & Inst. Code 6600 et seq., is applied in **bad faith** insofar as the enactment denies Petitioner a right to a fair trial, for Paraphilia-NOS terminology is unconstitutional on its face.

Beyond a doubt, Petitioner have been denied the opportunity to have a fundamental fair trial, when the only evidence put forth by Respondents violates the constitutional substantive due process guarantee. Here, the sufficiency of the evidence supporting a Commitment petition cannot be considered an adequate substitute for a disproved mental disorder.

> "Because rule of exhaustion of available state remedies is one of comity and not of jurisdiction, it is to be applied with flexibility; when state's procedural machinery is rendered ineffective by overly sophisticated technicalities and self-imposed limitations, federal court should not feel compelled to abstain. (Patterson v. leeke, 556 F.2d 1168 (C.A.4 (S.C.) 1977).)

Respondent raised the point that, Petitioner should (n)ot have an opportunity to have his writ heard, but the (only facts) put forth in support is Petitioner's appeal pending in the Six Appellate

- 8 -

1 District Court. Petitioner argues that he afforded every state

2 Court the occasion to challenge the "important state interest" in

3 question, but the Superior Court, Appellate Court and Supreme Court

4 refused to entertain the issues. Therefore, this Court holds juris-

5 diction and a constitutional right to decide the meritorious issues

6 before it, simply because of the constitutional flaw in the state

7 statute.

8     "Generally speaking, when confronting a statute's
constitutional flaw, this Court tries to limit the

9     solution to the problem, preferring to enjoin only
the statute's unconstitutional applications while

10     leaving the others in force." (United States v.
Booker, 543 U.S. 220, 227-229, 125 S.Ct. 738, 160

11     L.Ed.2d 621, as quoted in Ayotte v. Planned Parent-
hood of Northern New England, (U.S. 2006) 126 S.Ct.

12     961, 546 U.S. 320).

13   Importantly, the Court has previously recognized where the con-

14 text of a state statute infringes on an individual's constitutional

15 rights to procedural due process by a misinterpretation of the

16 legislative intent, the Court addressed the unconstitutionality of

17 the law without imposing its authority to destroy the existing

18 legislation. In the alternative, the Court (m)ust take into account

19 that the "doctrine of exhaustion" was throughly adhered to, when

20 Petitioner presented his claims in their entirety, to the state but

21 the Courts rejected the contents without question. Now, since this

22 Court has identified a specific and independent constitutional re-

23 quirement, that the enactment **"must contain proof"** of a legitimate

24 mental disorder to be constitutional, Respondent do not have the

25 right to cry "the petition is procedurally defective". The State

26 had its opportunity to exercise the right and to avail themselves of

27 the pending issues, but failed to do so.

28     "The policy, known as the abstention doctrine,

- 9 -

may be circumvented only in "extraordinary circum-
stances," such as proof of the state's **bad faith**
or **harassment.** Id. at 53; Carden v. Montance, 626
F.2d 82, 83 (9th Cir. 1980).

Petitioner alleges that the state Courts should have the first op-
portunity to review the claim and provide any necessary relief.
On the other hand, when the State Courts had the occasion to hear
the claims, they refused to comply to exhaustion requirement then
justice has been satisfied.

> "Once the federal claim has been fairly presented
> to the state courts, the exhaustion requirement
> of federal habeas corpus statute is satisfied."
> (Harris v. Superior Court of the State of CA, 500
> F.2d 1124 (9th Cir. 1974).

Futhermore, Petitioner argues that the claims presented before
this Court, are claims which bears no similarity to a judgment from
the Superior Court trial. First off, Petitioner's appeal attacks
issues that occurred within a trial hearing,  and at best if rever-
sal happens it only would give Petitioner a new trial on the same
invalidate diagnosis. Secondly, Petitioner assert that the necessary
and appropriate remedy, inwhich, he seeks on writ of habeas corpus
is the rendering of a narrower declaratory and injunctive relief.
He is not attacking the entire legislative enactment.

In, Younger v. Harris, 91 S.Ct. 756 (401 U.S. 36),

> "The Court confines itself to  deciding the policy
> considerations that in our federal system must pre-
> vail when federal Courts are asked to interfere
> with pending state prosecutions. Within this area,
> we hold that a federal Court must not, save in ex-
> ceptional and extremely limited circumstances, in-
> tervene by way of either injunction or declarat-
> ion in an existing state criminal prosecution."
> (FN3) "Such circumstances exist only when there
> is a threat of irreparable injury 'both great and
> immediate.' A threat of this nature might be shown
> if the state criminal statute in question were
> patently and flagrantly unconstitutional on its
> face, (Younger v. Harris, 401 U.S., at 53-54)(91

1  S.Ct., at 755; cf.)(Evers v. Dwyer, 358, 202, 79
   S.Ct. 178, 3 L.Ed.2d 222,) or if there has been
2  **bad faith** and **harassment**-Official lawlessness-in
   a statute's enforcement, (Younger v. Harris, 401
3  U.S., at 47-49,)(91 S.Ct., at 752-753.) In such
   circumstances the reasons of policy for deferring
4  to state adjudication are outweighted by the in-
   jury flowing from the very bringing of the state
5  proceedings, by the perversion of the very process
   that is supposed to provide vindication, and by
6  the need for speedy and effective action to pro-
   tect federal rights." cf. (Georgia v. Rachel, 384
7  U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925.)

8    Herewith, Petitioner argues that "not only" is Paraphilia-NOS is

9  (n)ot a diagnosable mental disorder, but the very concept of congen-

10 ital diagnosed mental disorder have never been proven to an exact-

11 ness. Hence, to reiterate the point, the term paraphilia is by its

12 presentation a subclass is unmistakable...and should never be mis-

13 interpreted as a mental disorder by its very specific encoding,

14 which is 302.9.

15   Therefore, the Court <u>must</u> give consideration to the writ as pre-

16 sented on the bases of 'extraordinary circumstances,' because of the

17 **'bad faith'** effort put forth by the State Courts, who abuse its dis-

18 creation to deny Petitioner and others the bare minimum of due pro-

19 cess.

20

21                    .   .   .   .   .   .   .   .   .

22

23

24

25

26 ////

27 ////

28 ////

- 11 -

1.  Evaluators' Testimony at Probable Cause
    Hearing and at the Trial is founded
    on Flawed Evidence

The Respondents subsequently filed their third commitment petition to recommit Petitioner as a Sexually Violent Predator, and he was given the indefinite commitment. Respondent sought to consolidate the second and third commitment petitions because both contained identical questions of law and fact: whether Petitioner **currently suffers from a diagnosed mental disorder** that makes him "a danger to the health and safety of others, in that, it is likely that he . . . will engage in sexually violent criminal behavior." Welf. & Inst. Code §6600 (a).

At the trial hearing, Dr. Korpi testified as to his diagnosis contained in the report that Petitioner suffers from Paraphilia-NOS, and Antisocial Personality Disorder. Dr. Korpi's diagnosis was based solely on his review of probation and police reports and Department of Mental Health medical records describing Petitioner's prior crimes and behavior at Atascadero State Hospital. [See Exhibit "A"; Diagnosis report conducted by Dr. Joseph R. Nevotti II, Ph.D., who set forth similar facts as Korpi and Starr.]

As to whether or not, Petitioner suffers from a supposed diagnosed mental disorder, which affects his ability to control his behavior, Dr. Nevotti offered only his opinion. In addition, he stated simply that Petitioner's past crimes demonstrate that Petitioner does not control his behavior, and this alone satisfied the statutory criteria for commitment. There was no current evidence put forth to demonstrate that Petitioner lacks violitional control, that qualifies him for recommitment and an indefinite commitment. In addition, Dr. Korpi stated that he did not base his opinion that

1  satisfies the SVPA criteria on Petitioner's current behavior, in-
2  stead the diagnoses comes from the fact that Petitioner is unable
3  to restrain his behavior.

4  Furthermore, Dr. Starr's testimony was that she diagnosed Petit-
5  ioner with Paraphilia-NOS based on his past criminal history invol-
6  ving rape. She also diagnosed Petitioner with 'adult antisocial
7  personality disorder', which is coded in the Diagnostic and Sta-
8  tistical Manual of Mental Disorders, Fourth Edition, Text Revision
9  ("DSM-IV-TR") as "V71.01", a so called "V-Code". Adult- antisocial
10 behavior is not itself a mental disorder as Dr. Starr or Korpi ad-
11 mitted. Yet, Dr. Starr testified that her diagnoses of paraphilia-
12 NOS necessarily satisfies the "lack of control" requirement set
13 forth in the law, because the definition contained under the general
14 categorical guidelines in the DSM-IV-TR for "Paraphilias" refers
15 to reoccurring and intense sexually arousing fantasies, sexual
16 urges or behavior.

17        "Until the early 1970s, psychiatric testimony in civil commit-
18        ment went largely unchallenged, both in courts and in the
          literature. However, for nearly fifteen years after 1970, a
19        series of articles assessing psychiatric prediction appeared,
          much of it sharply critical. n124 John Monahan's influential
20        study of both legal and psychiatric research literature con-
          cluded in 1981 that "the 'best' clinical research currently
21        in existence indicates the psychiatrists and psychologists
          are accurate in no more than one out of three predictions of
22        violent behavior." n125 In other words, "mental health profess-
          ionals ...are more likely to be wrong than right when they
23        predict legally relevant behavior." [Copyright (c) 2003
          University of California, Hastings College of Law Hastings
24        Law Journal November, 2003 55 Hastings L.J. 1.] "Attitudes
          Towards Predictions"

25 In Addington v. Texas, n167, the Court held that the proponent
26 of civil commitment must prove all elements of a civil commitment
27 action, including future dangerousness, using the standard of
28 "clear and convincing evidence."

1   Yet, it was not the circumstances when Paraphilia-NOS does not

2   meet the criteria of the law.

3                           . . . . . . . . .

4

5

6               2. Federal Consent Judgment Imposed DMH

7   On May 2, 2006, a Federal District Court issued a Consent Judg-

8   ment that imposed numerous conditions on the California Department

9   of Mental Health and its staff concerning the operations of Calif-

10  ornia's several state mental health facilities, Coalinga State Hos-

11  pital. [See, Submitted habeas corpus, Exh. "L"; Amended Consent

12  Judgment]  The consent judgment was the culmination of a comprehen-

13  sive investigation by the U.S. Justice Department's Civil Rights

14  Division, per its authority under the "Civil Rights of Institution-

15  alized Persons Act ("CRIPA"), 42 U.S.C. §1997, of those facilities.

16  Under CRIPA, the U.S. Attorney General is authorized to investigate

17  the confinement conditions at publicly-operated state institutions,

18  and may initiate civil law suits against a state if there is rea-

19  sonable cause to believe that conditions are part of a "pattern or

20  practice" of resistance to observance of institutionalized persons'

21  constitutional or Federal rights.

22   The Justice Department alleged in a complaint against the State

23  of California that the DMH-operated facilities "supports and ser-

24  vices that substantially depart from generally accepted professional

25  standards of care in the following specific respects, among others;

26  ...(b), the provision of adequate assessments diagnoses," and that

27  DMH staff "have failed and continue fail to assess individuals re-

28  siding in the facilities to ascertain whether these individuals are

                              - 14 -

1  --within the confines of any Court-Ordered confinement--receiving

2  adequate treatment, supports, and services in the most integrated

3  appropriate way to meet his individual treatment needs.

4    In the context of its action against the State of California, the

5  Justice Department determined that "not otherwise specified" diag-

6  noses, such as, the diagnosis of "Paraphilia-NOS" made by the eval-

7  uators in this case--are "ambiguous and result from "cursory assess-

8  ments [that] fail to provide the basis for a valid and reliable dia-

9  gnosis." In his report on the investigation's findings to Governor

10 Schwarzenegger, Assistant Attorney General Wan Kim cited the use of

11 the "NOS" diagnoses by DMH staff in their initial assessments of

12 confined individuals as a primary example of how the psychiatric

13 services at the facilities "substantially depart from generally ac-

14 cepted professional standards of care." For this reason, the terms

15 of the Consent Judgment imposed by the Justice Department on the

16 California Department of Mental Health on May 2, 2006, required that

17 all patients initially assessed with "NOS" diagnoses be reassessed

18 "through clinically appropriate assessments" and that such diagnoses

19 be "resolved in a clinically justifiable manner" within 60 days of

20 the date of the Consent Judgment. [See, Exhibit "B"; DMH Wellness

21 and Recovery Plan]  The reports are formulated every (30) thirty-

22 days with no significant diagnostic changes made, accept NOS has

23 been removed from the Axis:I, 302.9 diagnosis. Likewise, there is

24 never a full panel during the interview session as required by the

25 Department of Justice.

26                    . . . . . . . . . .

27 ////

28 ////

## II.
## THE COURT HAS DISCRETION TO HEAR THE
## PETITION FOR WRIT OF HABEAS CORPUS
## ON THE MERITS ALONE

The proceedings set forth in the SVPA is a Special Proceeding of a Civil Nature because it is neither an action at law nor a suit in equity. (People v. Superior Court (Cheek)(2001) 94 Cal.App.4th 980, 988.) The Court has discretion to hear Petitioner's Traverse to re-move his commitment pursuant to Code of Civil Procedure §187, which states that Courts have inherent power to adopt any suitable method of practice in "Ordinary Actions" and "Special Proceedings" if a procedure is not specified by statute.

. . . . . . . . . .

## III.
## UNDER THE SVPA PETITIONER MUST HAVE A
## SERIOUS DIFFICULTY CONTROLLING HIS BEHAVIOR
## DUE TO A DIAGNOSABLE MENTAL DISORDER

Petitioner's fate depends entirely on the evidence of the DMH evaluators, which determines in a trial whether Petitioner will face confinement for the rest of his life. (In re Wright (2005) 128 Cal. App. 4th 663,672: )"The evaluations are prerequisite to the filing of the petition and the evaluation serve as a procedural safeguard to prevent meritless petitions from reaching trial." To met the probable cause and trial requirement, the evidence must create a "strong" and "reasonable suspicion" that the Respondent has satis-fied all the elements required for commitment. (Cooley v. Superior Court, supra, 29 Cal. 4th 228, 249-250.) Thus, the evidence must

1 establish the existence of a <u>current</u> <u>diagnosed</u> <u>mental</u> <u>disorder</u> that

2 causes Petitioner **"serious difficulty"** in controlling his behavior,

3 as required by the U.S. Supreme Court in Kansas v. Crane (2002) 534

4 U.S. 407:

> "Hendricks underscored the constitutional import-
> ance of distinguishing a dangerous sexual offend-
> er subject to civil commitment "from other danger-
> ous persons who are perhaps more properly dealt
> with exclusively through criminal proceedings."
> [...] The presence of what the "psychiatric pro-
> fession itself classified...as a serious mental
> disorder" helped to make that distinction in Hend-
> ricks. And <u>a critical distinguishing feature of</u>
> that "serious...disorder" there consisted of a
> <u>special and serious lack of ability to control</u>
> <u>behavior.</u>" And this, when viewed in light of such
> features of the case as <u>the nature of the psych-</u>
> <u>diagnosis, and the severity of the mental abnor-</u>
> <u>mality itself, must be sufficient to distinguish</u>
> the dangerous sexual offender whose serious men-
> tal illness, abnormality, or disorder subjects
> him to civil commitment from the dangerous but
> tkypical recidivist convicted in an ordinary cri-
> minal case." (Kansas v. Crane, supra, 543 U.S. at
> 412; emphasis added.)

16 The California Supreme Court interpreted the Crane Standard as ap-

17 plied to the SVPA in (People v. Williams (2003) 31 Cal.4th 757:

> "[The SVPA's] language inherently encompasses and
> conveys to a fact finder <u>the requirement of a ment-</u>
> <u>tal disorder that causes serious difficulty in con-</u>
> <u>trolling one's criminal sexual behavior.</u>" (People
> v. Williams, supra, 31 Cal 757, 744)[emphasis
> added.]

22 Without a legitimate diagnosed mental disorder Petitioner cannot

23 be held as mental patient, or the detainment would be unconstitut-

24 ional. Indeed, in both Williams and Hubbart, the Court described

25 Hendricks and Crane as embodying general due process principles re-

26 grading civil commitment. (Williams, 31 Cal.4th at p.759, 3 Cal.

27 Rptr.3d 684, 74 P.3d 779 [in Crane, "the united States Supreme Court

28 held that the safeguards of personal liberty embodied in the due

- 17 -

1 process guaranty of the federal Constitution prohibit the involunt-
2 ary confinement of persons on the basis that they are dangerously
3 disordered without 'proof [that they have] serious difficulty in
4 controlling [their dangerous] behavior'"]; id. at p.772, 3 Cal.Rptr.
5 3d 684, 74 P.3d 779.
6   In DSM, mental disorders are not equivalent to the statutorily
7 defined "diagnosed mental disorder"; therefore, Paraphilia-NOS is
8 not itself a qualifying diagnosable mental disorder for purposes of
9 the SVPA. On the contrary, no DSM-IV-TR diagnostic criteria for any
10 mental disorder or combination of DSM-IV-TR mental disorders direct-
11 ly address the specific types of functional impairment that make up
12 the 6600 statute's "diagnosed mental disorder") i.e., "predisposit-
13 ion to commit sexually violent offenses" and "volitional impairment"
14 in reference to  preventing **oneself from behaving in harmony with**
15 **the predispposition**). Therefore, assignment of a DSM-IV-TR diagnosis
16 or combination of diagnoses is **not sufficient evidence** of the exis-
17 tence within Petitioner or the statute's "diagnosed mental disor-
18 der"; much more information then DSM diagnoses are necessary before
19 it can be determined if Petitioner **currently** suffers the statute's
20 version of a "diagnosed mental disorder", i.e., one that "makes the
21 person who is the type of dangerous sexually criminal recidivist."
22 To make such a diagnosis on the sole basis of the sexually criminal
23 behavioral history is even further removed from an acceptable add-
24 ress of the Petitioner's current mental and violitional conditions.
25 However, nowhere in Doctors' Starr's or Korpi's reports or testimony
26 did they present any evidence to indicate that they had done any-
27 thing, but assign the DSM diagnosis of "paraphilia-NOS on the sole
28 basis of the past sexually criminal history. A current mental dis-

- 18 -

1  order was never proven by either doctor in the present or past.

2  Petitioner does not suffer from a diagnosed mental disorder, which

3  is the facts herein.

4                    . . . . . . . . .

5                              IV.
                  THE STATUTE PRESUMES MENTAL DISORDER
6          AND DANGEROUSNESS WITHOUT CURRENT PROOF
                   OF A DIAGNOSED MENTAL DISORDER

7

8     Under the statutory definition, the only characteristic of a

9  diagnosed mental disorder is that it predisposes an offender to

10 commit sex crimes (WIC §6600, subd. (c), SB 1128 §53.) A person is

11 a **"sexually violent predator"** if the tendency to commit sexual

12 crimes makes it likely that he or she will engage in sexually vio-

13 lent criminal behavior. (WIC §6600 (a), SB 1128.) This definition

14 can be applied in the absence of any present symptoms of mental

15 illness, or any recent conduct indicating present dangerousness.

16 (WIC §6600, subd. (d), SB 1128.) The statute essentially **equates**

17 **past criminality with present disorder.**

18    A defendant is sexually violent predator if he or she suffers

19 from a disorder that may be diagnosed from a pattern of repeated

20 sex offenses. This is **circular reasoning,** transforming the offend-

21 er's [**past**] behavior into the disorder. (Young v. Weston, supra,

22 898 F.Supp. at p.750.) Indeed, it encompasses the mental condition

23 of recidivists and is distinct from mental illness. (People v. Wil-

24 der, supra, 33 Cal.App. 4th at p.101.)

25    The statute places considerable burden on allegedly sexually

26 violent individuals. Such a person faces potential lifetime confine-

27 ment pursuant SB 1128, even though he or she may not display, any

28  **current signs and symptoms** of a mental condition. (Id., WIC §6600

                              - 19 -

1  s.ubd. (d).) Thus, the state is allowed to presume present danger

2  based largely on past conduct. This is the same presumption that

3  was condemned in (People v. Gibson, (1988) 204 Cal.App.3d 1425.

4  wherein the Court noted:

> "Dangerousness is not universally and necessar-
> ily coexistent with unremitted mental illness. A
> finding that a mental illness was once a contribut-
> ing cause or aggravating factor in criminality does
> not change the fact that all former felons suffer-
> ing mental illness are not dangerous or violent.
> This fact is implicitly recognized by the several
> California involuntary commitment schemes requir-
> ing proof of both present mental illness and pre-
> sent dangerousness without regard to the criminal-
> ity of the person.

11  Here, Petitioner is in affect conclusively presumed dangerous so

12  long as he remains mentally ill, regardless of the **length of time**

13  since his criminal offense and conviction. (Id., at pp. 1493-1440.)

14  Such a presumption is no more permissible in this case. (See, Levine

15  v. Torvick (6th Cir. 1993) 986 F.Supp. 1506, 1513 [Past history

16  [does not] justify commitment when there are no signs and symptoms

17  of a mental illness].)

18  As see above, the SVPA provides that the treatment need not have

19  any potential for success. (WIC §6600, subd. (a), SB 1128.) Due

20  process and the Eighth Amendment protection against cruel and un-

21  usual punishment requires more than nominal treatment. Treatment

22  m]ust be meaningful. (People v. Lakey, supra, Cal.App. 3d at p.

23  971.)

24  In Foucha, the United States Supreme Court held that a state may

25  not indefinitely confine an individual with a personality disorder

26  for which there is no effective treatment. (Foucha v. Louisiana,

27  supra, 504 at p.82.) In order to meet constitutional standars,

28  treatment [m]ust provide a "realistic opportunity to be cured."

- 20 -

1 (Ohlinger v. Watson (9th Cir. 1980) 652 F.2d 775, 778.)

2 The California Supreme Court has stated:
3 "When patients are committed for treatment purposes they unquestionably have constitutional right to receive such individual treatment as
4 will give each of them a realistic opportunity to be cured or to improve his or her mental condition. [Citations.] Adequate and effective treat-
5 ment is constitutionally required because, absent treatment, the hospital is transformed "into a
6 penitentiary where one could be held indefinitely for no convicted offense. [Citations.] (People v.
7 Feagly, supra, 14 Cal.3d at p.359.)

8

9 Persons subjected to the provisions of the SVPA are similarly

10 confined in state treatment facilities located at a prison hospi-

11 tal, Coalinga State Hospital, which is nothing more than a

12 'high-tech prison' that has guard towers and double fencing and

13 rolls of concertina wire along the fences. Additionally, over half

14 of the housing units are not operating with trained Psychiatric

15 Technicians, but are manned with hospital police offices, whom car-

16 ry billy clubs and pepper spray similar to correctional officers

17 in a prison setting. Likewise, Coalinga State Hospital is built on

18 a section of land that is neighbored to Salinas Valley State Pri-

19 son. Hence, every day Petitioner awakes to a tormenting view of a

20 prison he sees from his dorm window. (Id., WIC §6604.)

21 In People v. Poe (App. 1 Dist. 1999) 88 Cal. Rptr.2d 437, 74 Cal.

22 App.4th 826;

23 "It was determined in Poe that a defendant [m]ust suffer from a true Diagnosed Mental Disorder. Not
24 a Personality disorder.

25 Although sexually violent confinement is renewable every two

26 years[2/], a person who is confined without treatment, which provides

27 2/ In the signing of the enactment SB 1128 by the Governor of California, the opportunity for review of an individuals commitment
28 every two years was repealed, and replaced with an indeterminate commitment sentence. Now Petitioner is literally compelled to participater in the sexual treatment program, in spite of the fact, he does not suffer a diagnoses mental disorder as the law requires.

1 no potential for success, faces **lifetime incarceration.** Treatment
2 without any potential of success is illusory. **It matters not** that a
3 person is willing to participate in treatment that helps he or she
4 from reoffending, or that such treatment may not conform to institu-
5 tional standards. Under these conditions, confinement under the SVPA
6 is essentially a "warehousing operation for social misfits". (Cross
7 Harris (D.C. Cir. 1969) 418 F.2d 1095, 1107.) Such a law violates
8 fundamental due process guarantees.

9                    . . . . . . . . .

18 ////
19 ////
20 ////
21 ////
22 ////
23 ////
24 ////
25 ////
26 ////

1  an alleged SVP, <u>shall</u> <u>do</u> <u>so</u> "in accordance with standardized asse-

2  ssment protocol" developed and undated by the State DMH [...]. The

3  standardized assessment protocol shall require an assessment of dia-

4  gnosable mental disorders[...]."

5  Although they are not told directly to do so, DMH-appointed SVP

6  evaluators are strongly encouraged by the authoritative wording in

7  the DMH "Clinical Evaluator's Handbook" to "utilize the diagnostic

8  categories in the DSM-IV-TR to describe the statutorily-defined

9  "diagnosed mental disorder" (i.e., "While the definition of a "dia-

10  gnosed mental disorder" is statutorily defined, clinicians can use

11  the categories in the Diagnostic and Statistical Manual of Mental

12  Disorders-Fourth Edition-Text Revision DSM-IV-TR) to describe the

13  diagnosed mental disorder." (p.17, Clinical Evaluator Handbook and

14  Assessment Protocol, January 2004; p. 17, part B.] The Handbook does

15  not, however, instruct the evaluators to disregard valid diagnostic

16  methods but instructs them to plainly justify their diagnoses with

17  valid dynamic evidence. Previous evaluators who evaluated Petition-

18  er did not describe in their reports or testimony the required evid-

19  ence as the diagnostic protocol calls for.

20  The only potentially qualifying diagnosis at issue in the Petit-

21  ioner's-case is "paraphilia-NOS", provided there is valid dynamic

22  psychological evidence to support the finding. In the Petitioner's

23  situation, the diagnosis of paraphilia-NOS has been the only diag-

24  nosis of a DSM-IV-TR mental disorder, in which, both evaluators con-

25  curred. Despite his inclusion of the descriptive phrase "sadistic

26  traits," (if it is a category given to an individual) neither doctor

27  <u>did</u> <u>such</u> <u>a</u> <u>diagnosis</u> on Petitioner with sexual sadism.

28  Some evaluators, such as Drs. Starr and Korpi continue to assign

1 │ the paraphilia-NOS diagnosis in SVP cases, on the sole basis of the

2 │ criminal sexual behavioral history without citing the precise diag-

3 │ nostic criteria they used to formulate the diagnosis, and without

4 │ providing evidence of the requisite "deviant sexual arousal" that

5 │ is the sine qua non to non, which makes a paraphilic diagnosis.

6 │ Their diagnostic method violates both DSM rules for making NOS diag-

7 │ nosis and DMH diagnostic protocol, but also is one of the principal

8 │ reasons the consent judgment ruled against usage of the NOS cate-

9 │ gories. Further, the American Psychiatric Association's Task Force

10 │ Report makes it clear that even with specifications of the criteria

11 │ used to make the paraphilic NOS diagnosis, there are significant

12 │ issues of its reliability and validity:

> "Whether or not any rapist has a paraphilia repre-
> sents a controversial issue in the research lite-
> rature. DSM has not classified paraphilic rapist
> as a mental disorder. Some researchers believe
> that a small group of rapists have diagnostic
> features similar to those with other paraphilias.
> The ability to make the diagnosis with a suffic-
> ient degree of validity and reliability remains
> problematic. In addition, other research has
> shown that many rapes are not the product pri-
> mary sexual interests, but rather represent an
> exercise in power and control. (Dangerous Sexual
> offenders: A Task Force Report of the American
> Psychiatric Association; APA, Washington D.C.,
> 1999, pp. 269-170.)(emphasis added.)

21 │ The consent judgment imposed on the Calaifornia Department of

22 │ Mental Health by the Department of Justice and the conclusions sta-

23 │ ted in the DOJ's investigation report to the Governor attest to the

24 │ fact that a Paraphilia-NOS diagnosis, which is not accompanied by

25 │ precise descriptions of the diagnostic criteria, and their sources

26 │ for making the diagnosis cannot even be considered a valid "clini-

27 │ cal" diagnosis (i.e., for treatment purposes). Much less can suffice

28 │ as evidence of the statutorily-defined "diagnosed mental disorder"

1   for "forensic" purposes (i.e., involuntary civil commitment and de-
2   privation of liberty). The consent judgment is in effect a **de facto**
3   regulation, with which the DMH must comply or face further action
4   in federal Court by the U.S. Attorney General for violating the
5   constitutional rights of institutionalized persons.

6      Petitioner's latest assessment, (evaluation not presented) appears
7   to reflect that DMH complying with the DOJ's mandate, in that, the
8   new daignosis that has been applied to some individuals, sexual sa-
9   dism and dropping the NOS from the paraphilia, the administration
10  is making slight changes to the evaluation process. Nevertheless,
11  the new diagnosis of sexual sadism, which has been given to some
12  individuals, is itself faultily made, in that, the individual's
13  past sexually behavior is used to justify existence of the diagno-
14  sis in this category is the same history that was used to include
15  the NOS diagnosis. Additionally, the sexual sadism diagnosis was
16  made, in spite of the previous assessments during an individuals
17  confinement, which all were an Axis-I Diagnosis of Paraphilia-NOS,
18  and the diagnosis does not comport to reach the diagnoses of sexual
19  sadism, which would distinguish an individual's case from that of
20  a "sadistic rapist".

21     Petitioner argues that the consent judgment applies specifically
22  to assessments made on individuals in the treatment setting, (i.e.,
23  those individuals who have already been institutionalized for some-
24  time). Petitioner further contend that the DMH is permitted to rely
25  on the diagnosis of paraphilia for its SVP evaluations, because the
26  person at the time of the evaluation is not institutionalized and
27  receiving treatment. Whereas, this result is a paradoxical scenario
28  in which the DMH could effectively cause a person to be institut-

ionalized based on a diagnosis it is legally bound **not to** employ
once that person is actually confined with a state-operated mental
health facility. This argument is fallacious in its contention that
the due process protections for involuntarily-confined individuals
are greater than those for individuals who are facing confinement
and deprivation of liberty for the remainder of their lives due to
state action. This outcome would clearly constitute an <u>arbitrary</u>
and <u>unreasonable</u> <u>interpretation</u> of the SVPA, and therefore deny
Petitioner his substantive due process and equal protection rights.
  In the Petitioner's writ of habeas corpus he indicated that para-
philia <u>is</u> <u>not</u> a diagnosable disorder, and he cites, (People v. Bur-
ris (2002) 102 Cal.App.4th 1096), in support of his argument that
paraphilia-NOS is not a diagnosable mental disorder under the SVPA.
A careful reading of <u>Burris</u> reveals, however, that no such holding
is ever made by the Court. In ruling on the issue of whether there
is sufficient evidence presented to demonstrate that defendant's re-
quired lack of control due to a mental disorder, the <u>Burris</u> Court
never addressed whether Paraphilia-NOS was a diagnosable mental dis-
order.
  Yet, <u>Burris</u> affirms that the central question in SVP cases is whe-
ather a sexual offender lacks control of his behavior due to a dia-
gnosable mental disorder. (Burris, supra, 102 Cal.App.4th 1096, 11-
07; "It follows that a recidivist violent offender who, <u>due</u> <u>to</u> <u>a</u>
<u>mental</u> <u>disorder</u>, is unlikely to be deterred by the risk of criminal
punishment lacks control in the requisite sense.")(emphasis added)
By the same token, <u>Burris</u> is no way suggest that recidivism is its
own evidence of one's having serious difficulty controlling sexual-
ly violent behavior, as the doctors appear to believe. Nor does

1 <u>Burris</u> contain any language indicating that recidivism is its own

2 evidence that one **currently** suffers from a qualifying mental disor-

3 der; of, that one suffering from a mental disorder necessarily lacks

4 control over his behavior as the doctors' testimony indicates at

5 Petitioner's trials.

6 Moreover, the facts of <u>Burris</u> are easily distinguished from this

7 case. Though  the defendant in <u>Burris</u> was diagnosed with paraphilia-

8 NOS, that is where the similarity to Petitioner's case ends. In

9 <u>Burris</u>, the defendant attempted to rape while awaiting trial for

10 raping another victim, then later raped a third victim while await-

11 ing sentencing on the original charge. There was also a history of

12 physical abuse in defendant's family, and he suffered from auditory

13 hallucinations. Additionally, the evidence presented at trial over-

14 whelmingly demonstrated that the defendant had "displayed a constant

15 pattern of conflict with the prison rules" while incarcerated.

16 Most of these incidents were violent or sexual in nature.

17
18
19
20
21
22
>"Within about a month, he received his first prison
>disciplinary citation; he continued to receive such
>citations throughout his time in prison. Most of
>them were for violent and/ or gang-related behavior
>including participation in a stabbing, attempted
>assault on a correctional official, possession of
>opiates, theft, destruction of state property, re-
>fusing orders, being out of bounds, improper use
>of food and 'inappropriate sexual behavior.' In
>one incident, while facing a female correctional
>officer, he grabbed his genitals and 'massag[ed]
>them.' (Burris, supra, 102 Cal.App.4th 1096, 1099.)

23

24 Petitioner, in stark contrast to the above, was never treated for

25 hallucinations or diagnosed with mental disorder during his incar-

26 ceration. He excelled in many prison programs and completed his term

27 without major incident. The handful of citations Petitioner received

28 over a fourteen year period was relatively monor. None of these in-

- 28 -

1  cidents involved violent, confrontational or sexual behavior. These

2  incidents do little to bolster the diagnostic opinions of the doc-

3  tors, Starr and Korpi, who both acknowledged that their **current** dia-

4  gnoses of paraphilia-NOS was based on Petitioner's past convictions.

5  Constitutional mandates require the Courts to protect the "due pro-

6  cess" rights of individuals before them, and prevent further violat-

7  ions denying the application of the Fifth, Eighth and Fourteenth

8  Amendments. The argument that mental health professionals are above

9  the law when it comes to their professional judgment has been sound-

10 ly rejected by the Ninth Circuit Court of Appeals. The Ninth Circuit

11 Court indicated that,

12          "[S]uch an argument would transfer the safe guard-
           ing of constitutional rights from the Courts to
13         mental health professionals. Conditions of confin-
           ment would be above judicial scrutiny and would de-
14         pend on who happened to be in charge of a parti-
           cular program." (Sharp v. Weston (2000) 233 F.3d 1166,
15         1171.) Further the Court stated, "the Courts may
           take action when there is a substantial departure
16         from accepted professional judgment; or, when there
           has been no exercise of professional judgment at
17         all." (Ibid.)

18 The U.S. Department of Justice, certainly a neutral arbiter in this

19 case, has determined that the diagnosis being applied to Petitioner

20 by the DMH evaluators "substantially depart[s] from generally ac-

21 cepted professional standards." Hence, the diagnoses is not accept-

22 ed as a valid mental disorder within the DSM-IV-TR.

23

24                    .   .   .   .   .   .   .   .   .

25                    C O N C L U S I O N

26

27 The petition for Petitioner's commitment is based entirely on a

28 discredited diagnosis that the DMH is now federally estopped from

using in its assessments of institutionalized persons. The profess-
ional opinions of the evaluators in this case are nothing short of
sophistry, given the language of the DSM-IV-TR, and the controvers-
ial nature of paraphilia-NOS in this psychiatric literature. This
evidence fails to establish the existence of a **current** diagnosed
mental disorder that causes Petitioner to have a "serious difficul-
ty" controlling his behavior, as required by the U.S. Supreme Court
in Kansas v. Crane, and the California Supreme Court in People v.
Williams. Thus, the evidence cannot create a reasonably "strong
suspicion that the Respondent satisfied all the elements required
for commitment. Respondent's evidence is insufficient as law, in
accordance with Cooley. Therefore, this Court is constitutionally
obligated to dismiss the commitment and discharge Petitioner. To
deny Petitioner's writ is tantamount to stripping him of his con-
stitutional protected rights and will permit "sham evaluations" to
deprive him and others of individual freedom and liberty in violat-
ion of their substantive due process rights. [See, Exhibit "D"; De-
position of Dr. Michael First, As Summarized by Richard Wollert,
Ph.D.]also, [Exhibit "E"; Brown v. Watters, 2007 U.S. Dist. LEXIS
53344; McGee v. Bartow, 2007 U.S. Dist. LEXIS 24700.]

Respectfully submitted,

Manse Sullivan
Petitioner

Dated: June 10, 2008.

- 30 -

# PROOF OF SERVICE BY MAIL

I, MANSE SULLIVAN _____, declare:

      I am, and was at the time of the service hereinafter mentioned, over the age of 18 years and not a party to the above-entitled cause. My (residence or business) address is

C-000425-9 / Unit #MA-2, Coalinga State Hospital, P. O. Box

5003, Coalinga, California 93210 _____,

and I am a resident of, or employed in, __Frenso_____ County, California.

      On the date of __June  16, 2008_____ I served the

__PETITIONER'S TRAVERSE IN DENIAL OF RESPONDENT'S ANSWER__

_TO WRIT OF HABEAS CORPUS AND MEMORANDUM OF POINTS AND___

_AUTHORITIES_____
                (exact title of document(s) served)

by depositing a copy of the document(s) in the United States mail at

(location) Coalinga State Hospital __ , (city)___Coalinga_____,

_____Frenso_____ County, California in a sealed envelope, with postage fully prepaid, addressed as follows: (In the space below insert the name and mailing address of each person you are serving with these documents. If the person is a party to the action or an attorney for a party, indicate that with the address.)

Clerk of the Court
United States District Court
Norther District of California
280 South First St., Rm. 2112
San Jose, California 95110-3095

Moona Nandi
Deputy Attorney General
State Bar No. 168263
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-3664

      At the time of mailing there was regular delivery of United States mail between the place of deposit and the place of address.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June  16, 2008_____

                           (Signature of person mailing)

                         MANSE SULLIVAN_____
                         (Name of person mailing, typed or printed)