1   Manse Sullivan
2   C-000425-9 / Unit #11
    Coalinga State Hospital
3   P. O. Box 5003
    Coalinga, California 93210

4   Moona Nandi
    Deputy Attorney General
5   State Bar. No. 168263
    455 Golden Gate Ave. Suite 11000
6   San Francisco, CA 94102-3664

7



FILED
Original

2009 SEP -2 P 3:24

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  MANSE SULLIVAN,                )
                      Petitioner,  )       Case No. 07-03020 JW (PR)
12                                 )
                                   )       **SUPPLIMENTAL MOTION TO TRAVERS**
13  v.                             )       **TO SUBMIT NEWLY DISCOVERED**
                                   )       **EVIDENCE PURSUANT TO F.R.Civ.P**
14  WARDEN,                        )       **15 (b)(d)**
                                   )
15                    Respondent.  )
    _____  )

16

17     Comes Now Petitioner, Manse Sullivan, who is moving pro se in

18  above entitled matter is a civil commitment detained pursuant the

19  Sexually Violent Predator Act (SVPA), is on writ of habeas corpus

20  is now requesting that he be allowed to put forth a Supplimental

21  Motion to Traverse to Submit Newly Discovered Evidence pursuant

22  Federal Rules of Civil Procedure (F.R.Civ.P.) 15 (b( and (d).

23     On August 20, 2008, Petitioner became aware of a determination

24  that was passed down by the Office of Administrative Law (OAL),

25  which declared that the Clinical Evaluator Handbook and

26  Standardized Assessment Protocol (2007), that was issued by the

27  Department of Mental Health (DMH), is an **underground regulation**

28  purported to be in violation of Government Code section 11340.5.

                              - 1 -

1   In light of the determination, Petitioner would allege that
2   because the protocol has been proven to be a regulation, which
3   is within the DMH's manual how an evaluation should be
4   conducted, and how it's decided if one is an SVP as defined in
5   Welfare and Institutions Code section 6601 (c) and (d), then the
6   OAL's ruling would contain important probative evidence to
7   support Petitioner's writ of habeas corpus pending before the
8   Court as further proof to refute the questionable diagnosis of
9   Paraphilia-NOS. (See Attached: Copy of OAL's determination)

10   In addition, Petitioner would allege that said facts are prima
11   facie evidence to establish that the writ meets the
12   **"extraordinary circumstances"** requirement, and exhaustion is
13   certainly not necessary for the Court to decide the writ on its
14   merits.

15   Therefore, Petitioner would plead with the Court to Take
16   Judicial Notice and Order the Respondents to .Answer to the
17   Newly Discovered Evidence setforth, which address the alleged
18   violation of Gov. Code sec. 11340.5; for, the subject matter
19   (**m**)**ust not** go unchallenged as the regulation (Handbook) put out
20   by DMH was, beyond a doubt, not adopted pursuant to the
21   Adminstrative Procedure Act (APA). In short, the protocol is
22   applied arbtrarily to commit Petitioner--as well as many others--
23   in total disregard of the proper protocol to conduct an
24   evaluation.

25   Finally, August 14, 2008, Petitioner went to his monthly
26   Treatment Team review, and it was determined that Petitioner
27   does not exhibit any **"signs and symptoms"** of a mental disorder
28   as was defined by the legislative intent, or as was diagnosed

1 by all previous psychologist. ( See, Exhibit "1"; DMH wellness

2 and recovery plan, p.3 of 16; para. #6)

3   Consequently, Petitioner would argue that either he suffers

4 from paraphilia, which is not a diagnosable mental disorder as

5 defined by the DSM-IV-TR, or he doesn't suffer from paraphilic

6 behavior. In other words, paraphilia is not the type of mental

7 symptoms that comes and goes each day-to-day, month-to-month, or

8 year-to-year as if it was a cold or flu that is contagious. If,

9 Petitioner doesn't suffer from paraphilia at present, as was

10 indicated by the Treatment Team psychologist, then he never

11 suffered the symptoms of paraphilia at any time in his life in

12 spite of the evaluations made by the previous psychologists, who

13 are agents working on behalf of the Respondents.

14   Petitioner declares under penalty of perjury that the

15 aforementioned is true and correct.

16

17

18 Dated: August 28, 2008.

19

20                        Respectfully submitted,

21                 Manse Sullivan
                Petitioner In Pro Per

22

23

24

25 ////

26 ////

27 ////

28 ////

# PROOF OF SERVICE BY MAIL

I, _____Manse Sillivan_____, declare:

  I am, and was at the time of the service hereinafter mentioned, over the age of 18 years and not a party to the above-entitled cause. My (residence or business) address is

_C-000425-9 / Unit #11, Coalinga State Hospital, P. O. Box_

_5003, Coalinga, California 93210_____,

and I am a resident of, or employed in, ___Fresno_____ County, California.

  On the date of ___August 28, 2008,_____ I served the

_SUPPLIMENTAL MOTION TO TRAVERS TO SUBMIT NEWLY DISCOVERED EVI-_

_DENCE PURSUANT TO F.R.Civ.P. 15 (b)(d)_____

_____

(exact title of document(s) served)

by depositing a copy of the document(s) in the United States mail at

(location) _Coaling State Hospital_ , (city) _Coalinga_____,

_____Fresno_____ County, California in a sealed envelope, with postage fully prepaid, addressed as follows: (In the space below insert the name and mailing address of each person you are serving with these documents. If the person is a party to the action or an attorney for a party, indicate that with the address).

```
Clerk of the Court                    Moona Nandi
United States District Court          Deputy Attorney General
Northern District of California       State Bar No. 168263
280 South First St., Rm 2112          455 Golden Gate Ave.
San Jose, California 95113-3095         Suite 11000
                                      San Francisco, California
                                      94102-3664
```

  At the time of mailing there was regular delivery of United States mail between the place of deposit and the place of address.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: _Aug. 28, 2008_

_____
(Signature of person mailing)

_____Manse Sullivan_____
(Name of person mailing, typed or printed)

COPY OF OAL's DTEMINATION

# STATE OF CALIFORNIA

# OFFICE OF ADMINISTRATIVE LAW

2008 AUG 15  AM 10: 46

### 2008 OAL DETERMINATION NO. 19
### (OAL FILE # CTU 2008-0129-01)

**REQUESTED BY:**  **Michael St. Martin**

**CONCERNING:**  **Department of Mental Health**

### DETERMINATION ISSUED PURSUANT TO
### GOVERNMENT CODE SECTION 11340.5.

## SCOPE OF REVIEW

A determination by the Office of Administrative Law (OAL) evaluates whether or not an action or enactment by a state agency complies with California administrative law governing how state agencies adopt regulations. Nothing in this analysis evaluates the advisability or the wisdom of the underlying action or enactment. Our review is limited to the sole issue of whether the challenged rule meets the definition of a "regulation" as defined in Government Code section 11342.600[1] and is subject to the Administrative Procedure Act (APA). If a rule meets the definition of a "regulation," but was not adopted pursuant to the APA and should have been, it is an "underground regulation" as defined in California Code of Regulations, title 1, section 250. OAL has neither the legal authority nor the technical expertise to evaluate the underlying policy issues involved in the subject of this determination.

## ISSUE

On January 29, 2008, Mr. St. Martin (Petitioner) submitted a petition to OAL challenging the Clinical Evaluator Handbook and Standardized Assessment Protocol (2007) (Protocol)[2] issued by the Department of Mental Health (DMH) as an underground regulation[3] allegedly in violation of Government Code section 11340.5. California Code

---

[1] Section 11342.600 defines regulation as:
> ...every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.

[2] The terms "Protocol" and "Handbook" are used interchangeably throughout the Protocol, the comments received from the public, the Department of Health's response, and the Petitioner's rebuttal. We will use the term "Protocol" but the term "Handbook" may also be used when quoting from these documents.

[3] An underground regulation is defined in title 1, California Code of Regulations, section 250:
> "Underground regulation" means any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, including a rule governing a state agency procedure, that is a regulation as defined in Section 11342.600 of the Government Code, but has not been adopted as a regulation

of Regulations, title 1, section 260(a)(3) requires that if the purported underground regulation is found in an agency manual, the petition shall identify the specific provision of the manual alleged to comprise the underground regulation. The petition included a list of ten provisions which contain the alleged underground regulation. This determination is limited to the following provisions specified in the petition:

1. Page 2, section titled "Evaluator Panel": "Evaluators are required to interview and evaluate persons in accordance with the protocol contained within this handbook...."

2. Page 2, section titled "Standardized Assessment Protocol": "This handbook and all supplemental instructions to DMH staff and contractors in the implementation of the [Sexually Violent Predator] law is the required standardized assessment protocol."

3. Page 4, section titled "Special requests from Courts & Attorneys": "DMH expects that evaluators will notify the SOCP [Sex Offender Commitment Program] Unit in Sacramento of all Court Orders and Attorney Requests that do not conform to the policies and procedures. DMH will then direct the evaluator in his/her response to such orders/requests."

4. Pages 9-11, section titled "The Clinical Interview": This section instructs the evaluator how to conduct the interview.

5. Page 9, section titled "Beginning the SOCP Evaluation": "In 'update' or 'replacement interview,' the court may issue an order that the evaluation be tape recorded, and/or an attorney be allowed to be present. The evaluator should comply with that order...."

6. Page 11, section titled "Historical Information": "Reliable history and prior clinical evaluations from the inmate's records should be used to provide a basis for decision making in [Sexually Violent Predator] evaluation."

7. Page 14, section titled "Subpoenas & Depositions": "If you receive such a subpoena, notify DMH who will advise you how to proceed."

8. Page 20, section titled "Psychological Testing": "While evaluators may organize their risk assessment in their own unique way, they must rely on the guidelines of this protocol and include the following elements of risk assessment."

9. Pages 16-32, section titled "SOCP Clinical Evaluation Protocol (Annotated)": this section contains detailed mandatory instructions in every facet of the clinical evaluation.

10. Page 35, section titled "[Sexually Violent Predator] Commitment Extension Evaluations": "Since the person has been committed as [a Sexually Violent Predator] by the court for 'appropriate treatment' (Welf. & Inst. Code § 6604), the department believes that a person must finish the program, including the completion of a period of outpatient supervision...."

and filed with the Secretary of State pursuant to the APA and is not subject to an express statutory exemption from adoption pursuant to the APA.

# DETERMINATION

OAL determines that the challenged language in the Protocol contains provisions that meet the definition of a "regulation" as defined in section 11342.600 and that those provisions should have been adopted pursuant to the APA. As noted in the response submitted by DMH, other provisions in the Protocol, which were not challenged in the petition, contain restatements of law and are not required to be adopted pursuant to the APA.

# FACTUAL BACKGROUND

On January 1, 1996, the California Sexually Violent Predator (SVP) law[4] became effective. The SVP law provides a process by which a current inmate of Department of Corrections and Rehabilitation (CDCR) can be civilly committed as a sexually violent predator and thereby becoming a patient of DMH.[5]

Pursuant to Welfare and Institutions Code section 6601, the Secretary of CDCR may determine, within six months prior to an inmate's scheduled release date, that an inmate is a sexually violent predator as defined in Welfare and Institutions Code section 6600. If the Secretary of CDCR makes such a determination, the inmate is referred to DMH for evaluation, pursuant to "a standardized assessment protocol, developed and updated by the State Department of Mental Health.[6]"

Welfare and Institutions Code 6601 establishes the following procedure to be used if the inmate is determined by DMH to be a sexually violent predator. DMH may initiate a petition in the court in the county in which the person was convicted to have the inmate civilly committed to a state hospital. A judge in the superior court of that county must hold a probable cause hearing. If the judge finds there is no probable cause to find that the inmate is a sexually violent predator, the inmate is returned to CDCR for parole. If the judge finds that there is probable cause to find that the inmate is a sexually violent predator, the inmate is detained in a secure facility until a jury trial can be held. The civil commitment is reviewed at least once per year. If, after this independent review, DMH determines that the individual's diagnosed mental disorder has so changed that he or she is not likely to commit future acts of sexual violence, the civil commitment is terminated.

The Protocol, as revised in 2007, was issued by DMH and contains the procedures and protocols to be used by the independent evaluators. Welfare and Institutions Code section 6601(c) requires that a person referred from CDCR be evaluated in accordance

---

[4] Welfare and Institutions Code section 6600 and following.
[5] A person who has been referred by CDCR to DMH for evaluation as an SVP is an "inmate" of CDCR. If that person is determined to be an SVP, he or she is transferred to a state hospital under the jurisdiction of DMH and is no longer an inmate of a CDCR prison. The SVP is then referred to as a "patient" or "individual."
[6] Welfare and Institutions Code section 6601(c).

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

with a standardized assessment protocol, developed and updated by DMH.  The Protocol is the standardized assessment protocol required by section 6601(c).[7]

The Petitioner challenged the entire Protocol as an underground regulation and gave specific examples of provisions that were alleged underground regulations.  Pursuant to California Code of Regulations, title 1, section 260(b)(3), OAL's acceptance of the petition was limited to the examples listed in the petition.  This determination is limited to those examples listed above, except when it is necessary to discuss additional provisions cited in DMH's response.

On June 2, 2008, OAL received a response to the petition from DMH.  We will address each argument in the Agency Response section below.  DMH asserts:

1.  The Protocol is not a regulation.  "Instead, it is a guide and a uniform format to be used by clinical evaluators, psychologists and psychiatrists, to make case-specific determination using their education, experience, and expertise to form and report their opinion, in the exercise of their independent professional clinical judgment."[8]

2.  The Protocol is not applied generally.  The Protocol "does not declare how a certain class of cases will be decided.  While the Protocol provides elements for evaluators to follow or look for, evaluators are asked to make a determination based on their own unique knowledge, experience, and personal assessment.... Two evaluators could evaluate the same patient, following the same elements set forth in the Protocol and still reach different conclusion."[9]

3.  "The evaluations performed with the Protocol and resulting reports are clinical evaluations, necessarily requiring the exercise of specialized, professional clinical judgment....  Since the available studies and literature are constantly being augmented, the clinical standards of the professions of psychology and psychiatry evolve over time, the DMH does not have authority to dictate or control the standards or clinical profession of psychology or psychiatry."[10]

4.  "The Protocol leaves the professional evaluation process in the hands of the evaluator.  For example, it does not limit the factors the evaluator may consider in reaching an evaluation outcome.... [T]he Protocol expressly states that the evaluator, not the Protocol, will determine the evaluation's outcome."[11]

5.  "The Protocol is not quasi-legislative.  The Protocol sets forth a format for the professionals to use for court reports.  ... [I]t does not tell the evaluator what determination to make....  While the format for the court report is intended to apply generally to all SVP reports, the format of the report in no way dictates the opinion of the evaluator."[12]

---

[7] Page 2 of the Protocol, section titled "Standardized Assessment Protocol"
[8] Page 3 of the response.
[9] Page 3 of the response.
[10] Page 5 of the response.
[11] Page 6 of the response.
[12] Page 6 of the response.

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

6.  Specified provisions of the Protocol are restatements of the Welfare and Institutions Code.[13]

OAL received several comments from the public.  The majority of the comments were from different regional offices of Protection and Advocacy, Inc.  The comments uniformly expressed agreement with the arguments in the petition and support a finding that the challenged provisions in the Protocol meet the definition of a regulation.  The commenters emphasized that evaluators are required to follow the Protocol and are not permitted to perform the evaluations in any manner not found in the Protocol.

On June 17, 2008, OAL received the Petitioner's rebuttal to DMH's response to the petition.  The rebuttal reiterates the arguments made in the petition and disagrees with the arguments made in DMH's response.

## UNDERGROUND REGULATIONS

Section 11340.5, subdivision (a), prohibits state agencies from issuing rules unless the rules comply with the APA.  It states as follows:

> (a) No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in [Government Code] Section 11342.600, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of State pursuant to [the APA].

When an agency issues, utilizes, enforces, or attempts to enforce a rule in violation of section 11340.5 it creates an underground regulation as defined in title 1, California Code of Regulations, section 250.

OAL may issue a determination as to whether or not an agency issued, utilized, enforced, or attempted to enforce a rule that meets the definition of a "regulation" as defined in section 11342.600 that should have been adopted pursuant to the APA.  OAL's determination that an underground regulation was created is not enforceable against the agency through any formal administrative means, but it is entitled to "due deference" in any subsequent litigation of the issue pursuant to *Grier v. Kizer* (1990) 219 Cal.App.3d 422, 268 Cal.Rptr. 244.

## ANALYSIS

A determination of whether the challenged rule is a "regulation" subject to the APA depends on (1) whether the challenged rule meets the definition of a "regulation" within

---

[13] Page 7 of the response.

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

the meaning of section 11342.600, and (2) whether the challenged rule falls within any recognized exemption from APA requirements.

A regulation is defined in section 11342.600 as:

> . . . every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.

In *Tidewater Marine Western, Inc. v. Victoria Bradshaw* (1996) 14 Cal.4[th] 557, 571, the California Supreme Court found that:

> A regulation subject to the Administrative Procedure Act (APA) (Gov. Code, §11340 et seq.) has two principal identifying characteristics. First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. Second, the rule must implement, interpret, or make specific the law enforced or administered by the agency, or govern the agency's procedure (Gov. Code, § 11342, subd. (g)).

The first element of a regulation is whether the rule applies generally. As *Tidewater* pointed out, a rule need not apply to all persons in the state of California. It is sufficient if the rule applies to a clearly defined class of persons or situations. We will look at each of the challenged provisions in turn to determine if it applies to a clearly defined class of persons or situations:

1. Page 2, section titled "Evaluator Panel": "Evaluators are required to interview and evaluate persons in accordance with the protocol contained within this handbook..."

This provision applies to all evaluators. Evaluators are a clearly defined class of persons. Additionally, the provision applies to all CDCR inmates referred to DMH for evaluation pursuant to the SVP law because it mandates how the evaluation is to be conducted. Both evaluators and inmates are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

2. Page 2, section titled "Standardized Assessment Protocol": "This handbook and all supplemental instructions to DMH staff and contractors in the implementation of the SVP law is the required standardized assessment protocol."

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

As with challenged provision 1, the requirement for DMH staff and contractors to use the Protocol in implementing the SVP law applies to evaluators, DMH staff and the inmates being evaluated. These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

3. Page 4, section titled "Special requests from Courts & Attorneys": "DMH expects that evaluators will notify the SOCP [Sex Offender Commitment Program] Unit in Sacramento of all Court Orders and Attorney Requests that do not conform to the policies and procedures. DMH will then direct the evaluator in his/her response to such orders/requests."

This requirement applies to evaluators, DMH staff and the inmates being evaluated. These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

4. Pages 9-11, section titled "The Clinical Interview": This section instructs the evaluator how to conduct the interview and includes the information the evaluator must give to the inmate. For example:
   a. The evaluator should begin by describing the interview process
   b. The inmate should be asked to sign a form providing information about Welfare and Institutions Code section 6600, the SVP law.
   c. The evaluator should comply with a court order to tape record an "update" or "replacement" interview.
   d. The section acknowledges that there are various approaches to interviewing sex offenders and the approach and structure of the interview is made by the evaluator. The Protocol specifies the questions that must be answered and the formats to be used.

This requirement applies to evaluators and also to the inmates being evaluated. These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

5. Page 9, section titled "Beginning the SOCP Evaluation": "In 'update' or 'replacement interview,' the court may issue an order that the evaluation be tape recorded, and/or an attorney be allowed to be present. The evaluator should comply with that order...."

This provision is part of challenged provision 4, above. This requirement applies to evaluators and also to the inmates being evaluated. These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

6. Page 11, section titled "Historical Information": "Reliable history and prior clinical evaluations from the inmate's records should be used to provide a basis for decision making in SVP evaluation."

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

This requirement applies to evaluators and also to the inmates being evaluated.    These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

7.  Page 14, section titled "Subpoenas & Depositions": "If you receive such a subpoena, notify DMH who will advise you how to proceed."

This requirement applies to evaluators.  This is a clearly defined class; therefore, the first element of *Tidewater* is met for this provision.

8.  Page 20, section titled "Psychological Testing": "While evaluators may organize their risk assessment in their own unique way, they must rely on the guidelines of this protocol and include the following elements of risk assessment."  The elements include approaches to risk assessment, actuarial risk assessment and adjusting an actuarial risk score.

This requirement applies to evaluators and also to the inmates being evaluated.  These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

9.  Pages 16-32, section titled "SOCP Clinical Evaluation Protocol (Annotated)": this section contains detailed mandatory instructions in every facet of the clinical evaluation.  For example,
    a.  The evaluator must include specific identifying information;
    b.  The evaluation must contain answers to specific questions such as:
        i.  Has the inmate been convicted of a sexually violent criminal offense specified in WIC 6600 against one or more victims.  This question includes a discussion of what information must be included (the use of force, violence, etc., any prior determinations that the inmate was a Mentally Disordered Sex Offender, etc.)  Requirements for how the information should be presented in the evaluation are also included;
        ii.  Does the inmate have a diagnosed mental disorder that predisposes the person to the commission of criminal sexual acts?  This question is followed by a detailed discussion of the "diagnosed mental disorder" and how that diagnosis is arrived at.

The requirements in this section apply to evaluators and also to the inmates being evaluated.  These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

10.  Page 35, section titled "SVP Commitment Extension Evaluations": "Since the person has been committed as an SVP by the court for 'appropriate treatment' (Welf. & Inst. Code § 6604), the department believes that a person must finish the program, including the completion of a period of outpatient supervision. Only under unusual circumstances would a patient being evaluated for SVP commitment extension be deemed unlikely to commit future sexually violent acts

> as a result of a mental disorder, if all five phases of treatment have not been completed. If this is the case, the evaluator is required to consult with the Department on their conclusion."

The requirements in this section apply to evaluators and also to the inmates being evaluated. These are clearly defined classes; therefore, the first element of *Tidewater* is met for this provision.

The first element of *Tidewater* is, therefore, met for all the challenged provisions in the Protocol.

The second element of *Tidewater* is that the rule must implement, interpret or make specific the law enforced or administered by the agency, or govern the agency's procedure. The SVP law requires inmates who are referred by CDCR to DMH as possible sexually violent predators to be evaluated by DMH. Pursuant to Welfare and Institutions Code section 6601(c) and (d), DMH must evaluate the person in accordance with a standardized assessment protocol, developed and updated by DMH to determine whether the person is a sexually violent predator. The standardized assessment protocol must require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. The risk factors which must be considered include criminal and psychosexual history, type, degree, and duration of sexual deviation and severity of mental disorder. The evaluation must be made by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist designated by DMH.[14]

On page 2 of the Protocol, DMH states:

> [Welfare and Institutions Code] Section 6601(c) requires that a person referred from CDCR be evaluated in accordance with a standardized assessment protocol, developed and updated by the DMH. This clinical evaluator handbook is the centerpiece of that protocol. This handbook may be supplemented by additional instructions to clinical evaluators as necessary. *This handbook and all supplemental instructions to DMH staff and contractors in the implementation of the SVP law is the required standardized assessment protocol.* (Emphasis added.)

The challenged provisions of the Protocol contain detailed requirements the evaluator must use to make the risk assessment required by Welfare and Institutions Code section 6601(c). For example, the challenged provisions require that the evaluator ask specific questions of the inmate, that the evaluator notify DMH of requests from the court or attorneys, and that the clinical interview provide specific information to the inmate. The Protocol itself states that it implements the SVP law which is enforced or administered by DMH.[15] Hence, the challenged provisions of the Protocol implement or make specific the SVP law or govern DMH's procedures implementing the SVP law.

---

[14] Welfare and Institutions Code section 6601(c) and (d).
[15] Page 2 of the response.

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

The second element in *Tidewater* is therefore met.

Finding that both elements of *Tidewater* have been met, OAL concludes that the challenged provisions of the Protocol meet the definition of a "regulation" as defined in section 11342.600.

The final issue to examine is whether the challenged provisions of the Protocol fall within an exemption from the APA. Exemptions from the APA can be general exemptions that apply to all state rulemaking agencies.[16] Exemptions may also be specific to a particular rulemaking agency or a specific program. Pursuant to section 11346, the procedural requirements established in the APA "shall not be superseded or modified by any subsequent legislation except to the extent that the legislation shall do so expressly."

We find no APA exemptions that would apply to the Protocol. DMH has not identified any express exemption from the APA that would include the Protocol.

As noted in DMH's response to the petition, some provisions in the Protocol, which were not challenged in the petition, are restatements of existing law. A restatement is not an exemption from the APA; rather, it repeats the law and does not further implement, interpret or make specific any provision of law. A restatement does not need to be adopted pursuant to the APA. Examples of restatements in the Protocol are:

1. Appendix A restates Welfare and Institutions Code section 6600 and the following sections in their entirety.
2. The Introduction includes a summarization of the requirements of the SVP law without further implementing, interpreting or making specific the SVP law.
3. The section titled "Evaluator Liability" on page 2 restates Penal Code section 1618.
4. The section titled "Definitions Relevant to SOCP" on page 6 contains a list of definitions restated from various Penal Code sections.

Such restatements do not meet the definition of "regulation" and are, therefore, not required to be adopted pursuant to the APA.[17]

## AGENCY RESPONSE

As noted above, in its response DMH makes several arguments. We will address each in turn.

---

[16] See Government Code section 11340.9.
[17] The definition of "regulation" in Government Code section 11342.600 means that the rule must "implement, interpret or make specific" the law enforced or administered by a state agency, or govern its procedure. A restatement of existing law is not an interpretation or implementation of that law.

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

1. The Protocol is not a regulation. "Instead, it is a guide and a uniform format to be used by clinical evaluators, psychologists and psychiatrists, to make case-specific determination using their education, experience, and expertise to form and report their opinion, in the exercise of their independent professional clinical judgment."[18]

We disagree with DMH's argument. A regulation is defined in Government Code section 11342.600 as:

> ...every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.

The challenged sections of the Protocol establish standards every evaluator must follow. On page 11, the Protocol states

> While this Evaluator Handbook *specifies the questions that must be answered and formats to be used,* it does not address everything an evaluator may need to consider. (Emphasis added.)

While the Protocol may be characterized as a "guide and a uniform format," the Protocol, by its own terms, is a document which the evaluators must use.[19] It contains specific instructions to the evaluators on how to conduct an evaluation, the questions they must ask, how to submit their findings, etc. The Protocol states: "All evaluations are assigned, supervised, and submitted to SOCP Evaluation Unit in Sacramento in accordance with instructions contained in this handbook."[20] By imposing these requirements on evaluators, the Protocol meets the definition of "regulation."

2. The Protocol is not applied generally. The Protocol "does not declare how a certain class of cases will be decided. While the Protocol provides elements for evaluators to follow or look for, evaluators are asked to make a determination based on their own unique knowledge, experience, and personal assessment.... Two evaluators could evaluate the same patient, following the same elements set forth in the Protocol and still reach different conclusion."[21]

OAL disagrees with this argument. In its analysis of the first element of *Tidewater, supra,* OAL determined that the challenged provisions of the Protocol are rules of general application because they apply to the class of evaluators and/or inmates. The Protocol requires that evaluators to conduct the evaluations in a specific way by asking specific questions or making specific findings. The conclusion reached by an individual evaluator

---

[18] Page 3 of the response.
[19] Page 2 of the Protocol.
[20] Page 2 of the Protocol.
[21] Page 3 of the response.

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01
may be based upon his or her "unique knowledge, experience, and personal assessment"
but the standards to be used, the questions to be asked, and the conduct of the evaluation
are mandated by the Protocol.

3. "The evaluations performed with the Protocol and resulting reports are clinical
   evaluations, necessarily requiring the exercise of specialized, professional clinical
   judgment....Since the available studies and literature are constantly being
   augmented, the clinical standards of the professions of psychology and psychiatry
   evolve over time, the DMH does not have authority to dictate or control the
   standards or clinical profession of psychology or psychiatry.[22]"

We agree that DMH does not have the authority to dictate or control the standards or
clinical profession of psychology or psychiatry. However, the Protocol does mandate
how the evaluation is conducted and how the results of the evaluation are presented. For
example, on page 9 of the Protocol (in the challenged provision listed above as number
4), in the section titled "Drawing Clinical Conclusions," the Protocol states:

> Each evaluator should produce a report that represents his or her best
> judgment. Clearly state definitive opinions with a YES or NO answer to
> each clinical question are required. At times, the facts may be conflicting
> or incomplete, making an unequivocal clinical opinion impossible. If,
> after review of all the information available, you are unable to support an
> affirmative conclusion regarding a criterion, then that criterion has not
> been met and the answer is **NO**.

This is an example of language in the Protocol that requires the evaluation to be
conducted in specified manner, that specific clinical questions be asked, and the
submission of the result to be in a specified manner. The evaluator is required to adhere
to these standards and procedures.

4. "The Protocol leaves the professional evaluation process in the hands of the
   evaluator. For example, it does not limit the factors the evaluator may consider in
   reaching an evaluation outcome.... [T]he Protocol expressly states that the
   evaluator, not the Protocol, will determine the evaluation's outcome.[23]"

We agree that the evaluation is based upon the evaluator's professional opinion; however,
the procedures and requirements for the evaluation are contained in the Protocol. The
evaluator is required to follow these procedures. The outcome of the evaluation may be
the opinion of the evaluator, but that opinion is developed by complying with the
required procedures and standards.

5. "The Protocol is not quasi-legislative. The Protocol sets forth a format for the
   professionals to use for court reports.... [I]t does not tell the evaluator what
   determination to make.... While the format for the court report is intended to

---

[22] Page 5 of the response.
[23] Page 6 of the response.

2008 OAL Determination No.19
August 15, 2008
CTU2008-0129-01

apply generally to all SVP reports, the format of the report in no way dictates the opinion of the evaluator.[24]"

The issue in this determination is not that compliance with the Protocol will result in a specific outcome. Rather the issue is whether the procedures and standards in the Protocol which all evaluators are required to use "implement, interpret, or make specific the law enforced by the agency; or govern the agency's procedure."[25]

As noted above, Welfare and Institutions Code section 6601(c) requires that a person referred from CDCR be evaluated in accordance with a standardized assessment protocol, developed and updated by DMH. The Protocol itself states that it is the required standardized assessment protocol.[26] The Protocol clearly implements, interprets, or makes specific the law enforced by the agency, or governs the agency's procedure.

6. Specified provisions of the Protocol are restatements of the Welfare and Institutions Code.[27]

We agree that many provisions of the Protocol are restatements of the Welfare and Institutions Code. A restatement of law does not meet the definition of a "regulation" because it does not "implement, interpret, or make specific the law enforced by the agency; or govern the agency's procedure."[28] Restatements, then, are not required to be adopted as regulations pursuant to the APA. To the extent that the Protocol contains solely restatements of law, those provisions are not underground regulations.

## CONCLUSION

The challenged provisions in the "Clinical Evaluator Handbook and Standardized Assessment Protocol (2007)" issued by DMH meet the definition of a "regulation" as defined in section 11342.600 that should have been adopted pursuant to the APA. The Protocol also contains provisions that were not challenged in the petition that merely restate existing law, as noted in DMH's response. The restatements of law do not meet the definition of "regulation" and are not required to be adopted pursuant to the APA.

Date:  August 15, 2008

Susan Lapsley
Director

Kathleen Eddy
Senior Staff Counsel

---

[24] Page 6 of the response.
[25] *Tidewater Marine Western, Inc. v. Victoria Bradshaw* (1996) 14 Cal.4th 557, 571.
[26] Page 2 of the Protocol, section titled "Standardized Assessment Protocol".
[27] Page 7 of DMH's response.
[28] *Tidewater Marine Western, Inc. v. Victoria Bradshaw* (1996) 14 Cal.4th 557, 571.

E X H I B I T  " 1 ":

DMH wellness and recovery plan, p.3 of 16, para. #6

## CALIFORNIA DEPARTMENT OF MENTAL HEALTH
## DMH WELLNESS AND RECOVERY PLAN

| INDIVIDUAL'S NAME: SULLIVAN, MANSE | | CASE NUMBER: 000425-9 | |
|---|---|---|---|
| CONFERENCE DATE: 8/14/2008 | FINALIZED DATE: 8/14/2008 | FREQUENCY TYPE: Monthly | |

**DIAGNOSIS:** *(Begin with principal diagnosis if the individual has multiple Axis I or Axis II diagnoses).*

| | | | | |
|---|---|---|---|---|
| Axis: I | 302.9 | P | PARAPHILIA | Diagnosis Date: 12/7/2007 |
| Axis: I | 303.90 | | ALCOHOL DEPENDENCE | Diagnosis Date: 12/7/2007 |
| Axis: II | 301.7 | | ANTISOCIAL PERSONALITY, DISORDER | Diagnosis Date: 12/7/2007 |
| Axis: III | 070.70 | | UNSPECIFIED VIRAL HEPATITIS C WITHOUT HEPATIC COMA | |
| Axis: III | 530.81 | | ESOPHAGEAL REFLUX | |
| Axis: III | V45.89 | | OTHER POSTPROCEDURAL STATUS | |
| Axis: III | 054.10 | | GENITAL HERPES, UNSPECIFIED | |
| Axis: IV | | | Problems in interaction with legal services (arrest, victimization) | |
| Axis: V | | | GAF: 70 | Last Quarterly GAF: 0 |

**LEGAL STATUS:** *(Begin with primary legal status if the individual has multiple legal statuses).*

| Code | Description | Effective Date | End Date |
|---|---|---|---|
| SVP | SEXUALLY VIOLENT PREDATOR | 11/1/1999 | |

**CASE FORMULATION:** *(Succinct analysis and integration of interdisciplinary assessments, including strengths and risk evaluation, which provides an understanding of the individual's situation, treatment and recovery needs).*

### Pertinent History

#### Personal History

The following personal history was gathered by Mike Themins, LCSW, who interviewed Mr. Sullivan 10-13-06, supplemented by information taken from Mr. Sullivan's records, with the primary sources being Civil Commitment evaluator's reports for historical information and current hospital records for current information.

According to Dr. Finberg's 1999 report, Mr. Sullivan was born in Fort Worth Texas and raised in Waco, Texas. Mr. Sullivan's family relocated to San Jose when he was nine years old. Mr. Sullivan grew up with his mother, sister, brother and other relatives and reported having a "perfect relationship" with his mother. Mr. Sullivan told Dr. Finberg he had seen his father only twice in his life. Mr. Sullivan reported that his mother has lived with three men off and on and had a history of being abused by them. His older sister died as a result of an accidental gunshot inflicted by his brother. Mr. Sullivan reported that he was molested on one occasion between the ages of five and seven by his maternal aunt.

Mr. Sullivan attended school until the tenth grade. He reported that he stopped attending in order to go to work. Mr. Sullivan stated he was able to maintain mostly B's and C's with occasional A's during the time he was attending school. However, he had a history of being expelled from school from Junior High through High school for fighting. Mr. Sullivan completed his GED while at Deuel Vocational Institution in Tracy, California. His work history includes various jobs such as janitorial work, car washing, dishwashing, laborer, construction, bakery and sales work.

Mr. Sullivan has been married and divorced twice. His first marriage was at age 17 and lasted for 3-1/2 years. He was divorced in 1974. Mr. Sullivan had one daughter from this marriage. He married a second time at age 26 and had two children from this marriage, which lasted 9-1/2 years. Mr. Sullivan was incarcerated most of the duration of these marriages.

| DMH WELLNESS AND RECOVERY PLAN<br>**Coalinga State Hospital**<br>Page 1 of 16<br><br>Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP<br>See the current WRP Manual for additional information regarding this form. | ADDRESSOGRAPH<br>WRP Status: FINAL<br><br>NAME: SULLIVAN, MANSE<br>INDIVIDUAL ID: 000425-9<br>PROGRAM: I    UNIT: 111 |
|---|---|

**Psychiatric H.....y**

Mr. Sullivan has a history of using alcohol and various other substances. Mr. Sullivan history has not presented any legal issues related to substance abuse other than a possession charge. Mr. Sullivan stated in his interview with Mr. Themins, LCSW on 10/13/06 that his alcohol and drug use was mostly during his young adult life and that he was able to stop using alcohol and other drugs without any assistance.

**Legal History**

Mr. Sullivan has had five arrests for sexual assaults against adult females on 7/09/68, 10/5/68, 12/4/76, 3/9/81, and 5/29/84. Mr. Sullivan also received CDC chronos for making inappropriate comments toward female staff dated 8/21/83, 12/28/93, and 3/24/98. Mr. Sullivan also has an extensive history of other criminal offenses, which includes battery on a peace officer, resisting arrest, auto theft, and assault with a deadly weapon, false imprisonment, and receiving stolen property. Mr. Sullivan has also received many 128a Custodial Chronos during his periods of incarceration.

## Predisposing Factors

Mr. Sullivan reported a limited positive role model while growing up as well as physical abuse by some of the male influences in his life (i.e. mother's boyfriends). In addition, a history of sexual abuse by a maternal aunt is a possible predisposing factor to his offending behaviors.

## Precipitating Factors

Mr. Sullivan has a history of anger and substance abuse that likely impacted his offending behaviors.

## Perpetuating Factors

It has been previously reported that Mr. Sullivan expressed the cognitive distortion that rape was less harmful than physical assault. Although he currently denies this sentiment, this and similar cognitive distortions are likely perpetuating factors towards criminal behavior.

Mr. Sullivan continues to decline to participate in Phase treatment.

## Previous Treatment and Response

Mr. Sullivan was a patient at ASH from 12-14-99 until transferred to CSH. However he did not participate in the SOCP at that facility. He did involve himself in AA and NA and attended anger management classes. It was noted that on 2-13-06 he asked a staff member if they could correspond after he was released and was re-directed.

During the Winter Quarter, 2006, Mr. Sullivan completed the Self-Esteem through Art Therapy group and Cinema Appreciation group. For the Spring quarter, 2007, Mr. Sullivan was enrolled in the following courses: Leisure Skills (Art Center), Creative Writing, Conflict Resolution through Art Therapy, Basic/Intermediate Guitar Skills, and Managing Anger. K. Colline, M.A., stated in regards to the Self Esteem through Art Therapy group, (3/29/07) "He was consistently appropriate with staff and peers." In regards to the Conflict Resolution through Art Therapy, K. Colline reported (3/29/07) "He was always willing to give feedback to other members of the group. Mr. Sullivan was appropriate with staff and peers." R. Stewart, Creative writing teacher stated, (3/31/07) "Mr. Sullivan is a diligent, hard working student. He genuinely seeks to improve his writing skills."

Last quarter, Summer 2007, Mr. Sullivan was enrolled in College distance learning, Tue, Wed and Fri, 1400-1450, and Relationship Skills group. Mall records indicate that Mr. Sullivan attended both groups regularly with full participation.

(Fall 2007) Mr. Sullivan completed Marine Science and Business 110.

For Quarter, Winter 2007, Mr. Sullivan was enrolled in college distance learning. He was taking Business 120 and Business 222. Mr. Sullivan was also enrolled in Basic/intermediate guitar skills.

| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
|---|---|
| **Coalinga State Hospital** | WRP Status: FINAL |
| Page 2 of 16 | NAME: SULLIVAN, MANSE |
| | INDIVIDUAL ID: 000425-9 |
| Confidential Patient Information | PROGRAM: I   UNIT: 111 |
| See W&I Code Section 5328 | |
| Filing Guidelines - Current WRP | |
| See the current WRP Manual for additional information regarding this form. | |

## Present Status

### Symptoms

Medical:

Mr. Sullivan recently recovered from back surgery. He had a spinal fusion and currently uses a cane to assist in walking. He reports that he has no trouble using the stairways or taking yoga groups.

Currently, he takes Ibuprofen for pain PRN because of complications with Hep C. Judi Heaton, RN, suggested that he consider using warm compresses, elevating his feet, and asking for pain medication when he is hurting. Nurse Heaton suspects that he may have sciaticia following the surgery and suggests he be referred to a physical therapist as soon as CSH hires one.

8-14-08 WRT agreed that they would allow Mr. Sullivan to use a portable Tens unit once a doctor or physical therapist can prescribe one.

Psychiatric:

Mr. Sullivan reports that he does not experience symptoms of anxiety or depression. He likewise reports that he does not experience suicidal or homicidal ideation.

Mr. Sullivan has demonstrated no signs of alcohol dependence since his admission to CSH and wants it noted that he attended and completed the 12 step program, aftercare program, 4 week maintenance class, Relapse prevention, and 2 years of inhouse AA/NA at ASH. Consequently, he would like his Alcohol Dependence diagnosis removed from his Axis 1.

Mr. Sullivan consistently declines to participate in SOCP Phase Treatment despite WRT's continued recommendations and encouragement. However, absence of documented symptoms does not indicate an absence of symptoms as it is well known that many symptoms of mental disorders occur intermittently, and/or internally with little or no outward manifestation, especially in paraphilias.

### Interventions and Response

OPEN FOCI:

3 _ Mr. Sullivan declines Phase treatment despite WRT's consistent recommendations.

5 - Mr. Sullivan is not interested in attending the SOCP Treatment program or AA/NA groups.

6 - See symptoms for medical issues. Medical: wears elastic back brace for support, able to ambulate, uses a wheel chair PRN, PRN Vicodin 5/500, PRN Ibuprofen 600mg for pain

8 - Mr. Sullivan is enrolled in College Distance Learning taking Business 120 and Business 222.

10 - Other groups he is attending are: Yoga, Topic of the Day, Computer 101, and Creative Gardening.

| DMH WELLNESS AND RECOVERY PLAN<br>**Coalinga State Hospital**<br>Page 3 of 16<br><br>Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP<br>See the current WRP Manual for additional information regarding this form. | ADDRESSOGRAPH<br>WRP Status: FINAL<br><br>NAME: SULLIVAN, MANSE<br>INDIVIDUAL ID: 000425-9<br>PROGRAM: I    UNIT: 111 |
| --- | --- |

**Risk Factors**

1) SELF-INJURIOUS/ SUICIDAL BEHAVIOR:

None in this category.

2) SECLUSION-RESTRAINT RISK FACTORS:

None in this category.

3) ASSAULT RISK FACTORS:

None in this category.

4) MEDICAL RISK FACTORS:

Recovering from back surgery.

5) FIRE-SETTING/ ESCAPE-ELOPEMENT/ VICTIMIZATION RISK FACTORS:

None in this category.

**Cultural**

There are no clear cultural factors that are currently relevant to Mr. Sullivan's treatment.

**Functional**

Mr. Sullivan is on HAS Level Gold. He participates in Gardening, Yoga, and Humor. Mr. Sullivan has no functional factors affecting his treatment at this time.

WRT commented on Mr. Sullivan's STRENGTHS which include: friendly demeanor, educated, self-starter, good learner, fitness and yoga oriented, good sense of humor, green thumb with plants, spiritual strengths with Hebrew-Israelite community, and demonstrates clear thinking.

| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
| --- | --- |
| **Coalinga State Hospital** | WRP Status: FINAL |
| Page 4 of 16 | |
| Confidential Patient Information | **NAME:** SULLIVAN, MANSE |
| See W&I Code Section 5328 | **INDIVIDUAL ID:** 000425-9 |
| Filing Guidelines - Current WRP | **PROGRAM:** I    **UNIT:** 111 |
| See the current WRP Manual for additional information regarding this form. | |

**Barrier to Discharge**

1. Mr. Sullivan will complete all SOCP Phase IV assignments as evidenced by group facilitator progress notes.

Progress toward this goal as of today's WRT:
Mr. Sullivan is currently not participating in SOCP treatment offered at CSH at this time.

2. Mr. Sullivan will write and he will discuss a realistic and detailed sex offender safety plan that adequately addresses all of his high risk factors as evidenced by SOCP Phase group facilitator progress notes.

Progress toward this goal as of today's WRT:
SEE BARRIER TO DISCHARGE #1

3. Mr. Sullivan will fully describe and demonstrate coping responses for high risk factors that he may face in the community as evidenced by SOCP Phase group facilitator progress notes.

Progress toward this goal as of today's WRT:
SEE BARRIER TO DISCHARGE #1

4. Mr. Sullivan will describe how the terms and conditions of his sentencing and his community release are appropriate to his criminal history as evidenced by SOCP Phase group facilitator progress notes.

Progress toward this goal as of today's WRT:
SEE BARRIER TO DISCHARGE #1

5. Mr. Sullivan will demonstrate management of his deviant sexual arousal through non-deviant PPG rating as evidenced by psychophysiology lab report.

**Behavioral Guidelines / PBS Plan**

Mr. Sullivan's behavior is appropriate and does not require a PBS Plan.

**By Choice**

Mr. Sullivan's total BY CHOICE points are:

Mall # 1-4: 20 points each; AM transition to the unit: 10 points; PM cooperation: 10 points.

Weekend: AM cooperation: 50 points; PM cooperation: 50 points.

Mr. Sullivan receives approximately 100% of his BY CHOICE monthly and is satisfied with his plan.

**MOSES**

Not taking psych medication

| LIFE GOALS: | (In the Individual's own words, include statements of dreams, hopes, aspirations, role functions and vision of life). |
|---|---|

I would like to remain crime free.

| DISCHARGE CRITERIA FOR ANTICIPATED PLACEMENT: | (Specific observable, behavioral, or measurable criteria for discharge). |
|---|---|

| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
| Coalinga State Hospital | WRP Status: FINAL |
| Page 5 of 16 | |

NAME: SULLIVAN, MANSE
INDIVIDUAL ID: 000425-9
PROGRAM: I    UNIT: 111

Confidential Patient Information
See W&I Code Section 5328
Filing Guidelines - Current WRP

See the current WRP Manual for additional information regarding this form.

If the court or ju...nds that Mr. Sulliva... not a SVP he will b...eased unconditions...nrough the court. If, ...the other hand, the court or jury finds that he is a SVP, he will be released to a supervised, outpatient, community, Sex Offender Treatment Program at the completion of the Phase Program here at CSH.

Mr. Sullivan will need to meet the following criteria for SOCP Phase V staffing:

1. Mr. Sullivan will complete all SOCP Phase IV assignments as evidenced by group facilitator progress notes.

2. Mr. Sullivan will write and he will discuss a realistic and detailed sex offender safety plan that adequately addresses all of his high risk factors as evidenced by SOCP Phase group facilitator progress notes.

3. Mr. Sullivan will fully describe and demonstrate coping responses for high risk factors that he may face in the community as evidenced by SOCP Phase group facilitator progress notes.

4. Mr. Sullivan will describe how the terms and conditions of his sentencing and his community release are appropriate to his criminal history as evidenced by SOCP Phase group facilitator progress notes.

5. Mr. Sullivan will demonstrate management of his deviant sexual arousal through non-deviant PPG rating as evidenced by psychophysiology lab report.

| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
|---|---|
| **Coalinga State Hospital** | WRP Status: FINAL |
| Page 6 of 16 | |
| | NAME: SULLIVAN, MANSE |
| Confidential Patient Information | INDIVIDUAL ID: 000425-9 |
| See W&I Code Section 5328 | |
| Filing Guidelines - Current WRP | PROGRAM: I    UNIT: 111 |
| See the current WRP Manual for additional information regarding this form. | |

COPY

**FOCUS OF HOSPITALIZATION:** (check the items which are ...ers to discharge)

| FOCUS # | FOCUS DESCRIPTION |
|---------|-------------------|
| ☑ 3.1 | Mr. Sullivan has a history of rape. |
| ☑ 5.1 | Staged objectives waived because 'Mr. Sullivan reports having 26 years of sobriety and is not interested in 12 step programs or substance abuse groups at this time. '; Mr. Sullivan has a history of substance abuse. |
| ☐ 6.1 | Mr. Sullivan suffers from chronic headaches and right shoulder pain. |
| ☐ 6.3 | Health Maintance condition: Hepatitis C, treat per doctors order. |
| ☐ 8.1 | Mr. Sullivan is interested in pursuing Adult Basic Education. |
| ☐ 10.1 | Mr. Sullivan would benefit from healthy leisure activities with peers. |

| DMH WELLNESS AND RECOVERY PLAN<br>**Coalinga State Hospital**<br>Page 7 of 16<br><br>Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP<br><br>See the current WRP Manual for additional information regarding this form. | ADDRESSOGRAPH<br>WRP Status: FINAL<br><br>NAME:    SULLIVAN, MANSE<br>INDIVIDUAL ID:    000425-9<br>PROGRAM: I    UNIT:  111 |
|---|---|

**FOCUS # 3.1. Dangerousness and Impulsivity**

Mr. Sullivan has a history of rape.

| OBJECTIVES: | (Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress). | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 3.1.1 | Mr. Sullivan will be introduced to the Sex Offender Phase Treatment Program available at CSH as evidenced by participating in Phase I group and/or meeting with his Unit S.W./Psychologist to discuss the program over the next 90 days per IDN and self-report. | 1 - Pre-Contemplation | Not Met | 9/24/2008 |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 3.1.1.1 | V. Kelly, MSW and E. Leslie, MSW will provide Phase I Discussion groups on Mondays and Wednesdays from 1310-1450. Mr. Sullivan's motivation to be released and integrate into the community will be utilized to attain the above objective. | ☑ | | |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| 3.1.1.2 | Dr. Mwangi, Psychologist, and Ms. Woods, BS II, will be available to meet with Mr. Sullivan at his request to discuss the SOCP treatment available at CSH. Facilitators will encourage Mr. Sullivan to request and engage in this meeting to gain information regarding the options available to him. | ☐ | | |

| DMH WELLNESS AND RECOVERY PLAN<br>**Coalinga State Hospital**<br>Page 8 of 16<br><br>Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP<br><br>See the current WRP Manual for additional information regarding this form. | ADDRESSOGRAPH<br>WRP Status: FINAL<br><br>**NAME:** SULLIVAN, MANSE<br>**INDIVIDUAL ID:** 000425-9<br>**PROGRAM:** I    **UNIT:** 111 |
|---|---|

| OBJECTIVES: | *(Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress).* | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 3.1.2 | Mr. Sullivan will list three reasons an individual may benefit from SOCP Phase Treatment during his next WRP Team while continuing to explore the treatment options at CSH as evidenced by his attendance and participation in SOCP Phase I per IDN and self-report. | 2 - Contemplation | Inactive | 9/24/2008 |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 3.1.2.1 | V. Kelly, MSW and E. Leslie, MSW will provide Phase I Discussion groups on Mondays and Wednesdays from 1310-1450. Mr. Sullivan's motivation to be released and integrate into the community will be utilized to attain the above objective. | ☑ | | |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| 3.1.2.2 | Dr. Mwangi, Psychologist, and Mr. Sweeney, BS II, will be available to meet with Mr. Sullivan at his request to discuss the SOCP treatment available at CSH. Facilitators will encourage Mr. Sullivan to request and engage in this meeting to gain information regarding the options available to him. | ☐ | | |

| OBJECTIVES: | *(Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress).* | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 3.1.3 | Mr. Sullivan will continue to weigh his personal pros and cons to engaging in SOCP Phase II Treatment which he will discuss at his next 90 day WRP Team as he continues to attend and participate in Phase I as evidenced by ID notes and self-report. | 3 - Preparation | Inactive | 9/24/2008 |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 3.1.3.1 | V. Kelly, MSW and E. Leslie, MSW will provide Phase I Discussion groups on Mondays and Wednesdays from 1310-1450. Mr. Sullivan's motivation to be released and integrate into the community will be utilized to attain the above objective. | ☐ | | |

DMH WELLNESS AND RECOVERY PLAN

**Coalinga State Hospital**

Page 9 of 16

Confidential Patient Information
See W&I Code Section 5328
Filing Guidelines - Current WRP

See the current WRP Manual for additional information regarding this form.

ADDRESSOGRAPH
WRP Status: FINAL

NAME:     SULLIVAN, MANSE

INDIVIDUAL ID:  000425-9

PROGRAM: I     UNIT:  111

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| 3.1.3.2 | Dr. Mwangi, Psychologist, and Mr. Sweeney, BS II, will be available to meet with Mr. Sullivan at his request to discuss the SOCP treatment available at CSH. Facilitators will encourage Mr. Sullivan to request and engage in this meeting to gain information regarding the options available to him. | ☐ | | |

| OBJECTIVES: | (Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress). | | | |
|---|---|---|---|---|
| OBJ # | OBJECTIVE DESCRIPTION | STAGE | STATUS | TARGET DATE |
| 3.1.4 | Mr. Sullivan will review and sign the consent form for SOCP Phase II – IV, after reviewing the form with his Unit S.W./Psychologist, within the next 90 days as evidenced by ID notes and self-report. | 4 - Action | Inactive | 9/24/2008 |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| INT # | INTERVENTION DESCRIPTION | ACTIVE TX | DISC. REASON | DISC. DATE |
| 3.1.4.1 | V. Kelly, MSW and E. Leslie, MSW will provide Phase I Discussion groups on Mondays and Wednesdays from 1310-1450. Mr. Sullivan's motivation to be released and integrate into the community will be utilized to attain the above objective. | ☑ | | |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| 3.1.4.2 | Dr. Mwangi, Psychologist, and Mr. Sweeney, BS II, will be available to meet with Mr. Sullivan at his request to discuss the SOCP treatment available at CSH. Facilitators will encourage Mr. Sullivan to request and engage in this meeting to gain information regarding the options available to him. | ☐ | | |

DMH WELLNESS AND RECOVERY PLAN
**Coalinga State Hospital**
Page 10 of 16

Confidential Patient Information
See W&I Code Section 5328
Filing Guidelines - Current WRP

See the current WRP Manual for additional information regarding this form.

ADDRESSOGRAPH
WRP Status: FINAL

NAME:          SULLIVAN, MANSE
INDIVIDUAL ID:  000425-9
PROGRAM: I      UNIT:  111

| OBJECTIVES: | *(Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress).* | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 3.1.5 | Mr. Sullivan will continue to attend and participation in Phase I as he awaits Phase II group placement as evidenced by ID notes and self-report. | 5 - Maintenance | Inactive | 9/24/2008 |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 3.1.5.1 | V. Kelly, MSW and E. Leslie, MSW will provide Phase I Discussion groups on Mondays and Wednesdays from 1310-1450. Mr. Sullivan's motivation to be released and integrate into the community will be utilized to attain the above objective. | ☑ | | |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| 3.1.5.2 | Dr. Mwangi, Psychologist, and Mr. Sweeney, BS II, will be available to meet with Mr. Sullivan at his request to discuss the SOCP treatment available at CSH. Facilitators will encourage Mr. Sullivan to request and engage in this meeting to gain information regarding the options available to him. | ☐ | | |

| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
|---|---|
| **Coalinga State Hospital** | WRP Status: FINAL |
| Page 11 of 16 | |
| Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP | **NAME:** SULLIVAN, MANSE<br>**INDIVIDUAL ID:** 000425-9<br>**PROGRAM:** I    **UNIT:** 111 |
| See the current WRP Manual for additional information regarding this form. | |

**FOCUS # 5.1    Substance Abuse**

Mr. Sullivan has a history of substance abuse.

| OBJECTIVES: | *(Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress).* | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 5.1.1 | Mr. Sullivan will develop a support group relative to relapse prevention by attending at least one AA/NA meetings within the next 30 days as evidenced by his self-report and mall attendance records. | 3 - Preparation | Not Met | 9/24/2008 |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 5.1.1.1 | AA/NA treatment groups are available on Mondays and Wednesdays from 1515 to 1615 in Gold Country PS 101. Mr. Smith's desire to maintain his sobriety will be utilized to achieve the above objective. | ☑ | | |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| 5.1.1.2 | Treatment team will explore Mr. Sullivan's claim that he has no history of substance abuse and that he is not in need of substance abuse treatment. | ☐ | | |

| DMH WELLNESS AND RECOVERY PLAN<br>**Coalinga State Hospital**<br>Page 12 of 16<br><br>Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP<br>See the current WRP Manual for additional information regarding this form. | ADDRESSOGRAPH<br>WRP Status: FINAL<br><br>**NAME:**     SULLIVAN, MANSE<br>**INDIVIDUAL ID:**   000425-9<br>**PROGRAM: I**    **UNIT:  111** |
|---|---|

**FOCUS # 6.1   Medical, Health and Wellness**

Mr. Sullivan suffers from chronic headaches and right shoulder pain.

| OBJECTIVES: | *(Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress).* | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 6.1.1 | Ind will request appropriate PRN pain medication for pain relief, using the 1/10 pain scale x45 days. | 00 - No Specific Stage | Partially Met | 10/21/2008 |

| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 6.1.1.1 | Staff will encourage Ind to use non-pharmacological interventions (rest,relaxation techniques, deep breathing exercises, positional support, warm shower) for pain relief before using medication. | ☑ | | |
| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
| 6.1.1.2 | Staff will encourage Ind. to keep busy, position for comfort, preform range of motion to comfort. | ☑ | | |
| INTERVENTIONS: | *(Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.)* | | | |
| 6.1.1.3 | Staff will dispense Vicodin 5/500, Motrin 600mg, pain medication per doctor's order. | ☑ | | |

| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
|---|---|
| **Coalinga State Hospital** | WRP Status: FINAL |
| Page 13 of 16 | |
| Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP | **NAME:** SULLIVAN, MANSE<br>**INDIVIDUAL ID:** 000425-9<br>**PROGRAM:** I   **UNIT:** 111 |
| See the current WRP Manual for additional information regarding this form. | |

**FOCUS # 8.1** ... **ool and Education**

Mr. Sullivan is interested in pursuing Adult Basic Education.

| OBJECTIVES: | (Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress). | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 8.1.1 | Mr. Sullivan is in a college program in order to achieve a bachelor's degree in Business. | 00 - No Specific Stage | Partially Met | 9/24/2008 |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 8.1.1.1 | Mr. Ketcham, Teacher, will offer Mr. Sullivan a study hall for his college distance learning and proctor his exams. He will utilize Mr. Sullivan's interest to obtain a college diploma as a motivation to achieve the above objective. | ☑ | | |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| 8.1.1.2 | Treatment team members will review Mr. Sullivan's progress in his college distance classes and discuss what classes he is interested in for next quarter. | ☐ | | |

| OBJECTIVES: | (Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress). | | | |
|---|---|---|---|---|
| **OBJ #** | **OBJECTIVE DESCRIPTION** | **STAGE** | **STATUS** | **TARGET DATE** |
| 8.1.2 | Mr. Sullivan has decided to not participate in classes at this time due to his recovery from back surgery. He is looking to the possibility of re-enrolling in classes/groups in the Fall Quarter. Mr. Sullivan will pursue to learn computer by participating in Computer 101 learning class in the Spring Quarter, as evidenced by Mall progress notes and self reports. | 00 - No Specific Stage | Partially Met | 9/24/2008 |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| **INT #** | **INTERVENTION DESCRIPTION** | **ACTIVE TX** | **DISC. REASON** | **DISC. DATE** |
| 8.1.2.1 | Mr. Everly, teacher, will offer Mr. Sullivan a class entitled Microsoft Office for Beginners, MTWThF, 1300-1350 at AE 121 to achieve the above objectives. | ☑ | | |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| 8.1.2.2 | WRP team will monitor Mr. Sullivan's progress in the said class as evidenced by his report and facilitator's report. | ☐ | | |

| DMH WELLNESS AND RECOVERY PLAN<br>**Coalinga State Hospital**<br>Page 14 of 16<br><br>Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP<br>See the current WRP Manual for additional information regarding this form. | ADDRESSOGRAPH<br>WRP Status: FINAL<br><br>**NAME:** SULLIVAN, MANSE<br>**INDIVIDUAL ID:** 000425-9<br>**PROGRAM:** I    **UNIT:** 111 |
|---|---|

**FOCUS # 10.1** **sure and Recreatio**

Mr. Sullivan would benefit from healthy leisure activities with peers.

| OBJECTIVES: | (Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress). | | | |
|---|---|---|---|---|
| OBJ # | OBJECTIVE DESCRIPTION | STAGE | STATUS | TARGET DATE |
| 10.1.1 | Mr. Sullivan will develop his leisure skills by participating in the Cinema Appreciation group. | 00 - No Specific Stage | Met | 4/3/2007 |

| OBJECTIVES: | (Describe the specific changes expected, in terms of the individual's behavior, in measurable and behavioral terms. Include the target date for completion for each objective and the method used to measure progress). | | | |
|---|---|---|---|---|
| OBJ # | OBJECTIVE DESCRIPTION | STAGE | STATUS | TARGET DATE |
| 10.1.2 | Mr. Sullivan will continue to be involved in recreation and leisure activities to further develop his support system and interpersonal skills as evidenced by his attendance at hospital wide activities per ID notes/ mall attendance and/or self-report. | 00 - No Specific Stage | Partially Met | 10/24/2008 |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| INT # | INTERVENTION DESCRIPTION | ACTIVE TX | DISC. REASON | DISC. DATE |
| 10.1.2.1 | Ms. Higgins facilitates Yoga group on Mondays through Fridays from 1400 - 1450 in small chapel. | ☑ | | |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| 10.1.2.2 | Ms. Bentivegna facilitates Creative Gardning group on Tuesdays from 0910 - 1050 in VE 104. | ☑ | | |

| INTERVENTIONS: | (Describe the clinical activity/treatment modality/therapeutic milieu activity, the provider of the care and where and when the intervention will take place. For each intervention, state at least 1 (one) strength the individual has that will be used by the service provider to help the individual achieve the specific objective.) | | | |
|---|---|---|---|---|
| 10.1.2.3 | Mr. Tahim facilitates Humor group on Thursdays from 0910 - 1050 in PS 101. | ☑ | | |

| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
|---|---|
| **Coalinga State Hospital** | WRP Status: FINAL |
| Page 15 of 16 | NAME: SULLIVAN, MANSE |
| Confidential Patient Information<br>See W&I Code Section 5328<br>Filing Guidelines - Current WRP | INDIVIDUAL ID: 000425-9<br>PROGRAM: I    UNIT: 111 |
| See the current WRP Manual for additional information regarding this form. | |

**Signature Information:**

| | |
|---|---|
| **Individual:** MANSE SULLIVAN | **Participation Code:** FP |
| **Individual ID:** 2000425-9 | **Description :** Full Participation |
| **WRPID:** 46756 | **Absence Reason:** |
| **WRP Status:** Final | **Discharge Criteria Met:** No |
| **Finalized Date:** 8/14/2008 | **Offered a Copy:** Yes |
| **Conference Date:** 8/14/2008 | **Accepted a Copy:** Yes |

| Discipline | Attendee Name | Lead | Attended | Signature |
|---|---|---|---|---|
| Individual | MANSE SULLIVAN | | | |
| Psychologist | HIGGINS, PATRICIA \| PSYCHOLOGIST | Yes | Yes | |
| Rehabilitation Therapist | SHIRAISHI, NOBUYUKI \| REHAB THERAPIST | No | Yes | |
| Social Worker | WILLIAMS, JAMEE \| SOCIAL WORKER | No | Yes | |
| RN / Psychiatric Nurse Practitioner | HEATON, JUDI \| RN | No | Yes | |
| LVN / Psychiatric Technician | JOYA, MIRIAM \| SENIORPSYCHTEC | No | No | |

| | |
|---|---|
| DMH WELLNESS AND RECOVERY PLAN | ADDRESSOGRAPH |
| **Coalinga State Hospital** | WRP Status: FINAL |
| Page 16 of 16 | |
| Confidential Patient Information | **NAME:** SULLIVAN, MANSE |
| See W&I Code Section 5328 | **INDIVIDUAL ID:** 000425-9 |
| Filing Guidelines - Current WRP | **PROGRAM:** I    **UNIT:** 111 |
| See the current WRP Manual for additional information regarding this form. | |